ANDREW, P.J.T.C.
In this state tax case, plaintiff, Royal Foods Distributors, Inc., contests a determination by defendant, Director of the Division of Taxation, denying plaintiff’s claim for a refund of litter control taxes previously paid by plaintiff for tax years 1991 and 1992. Generally, plaintiff maintains that the perishable food products which it sold to retail stores in disposable containers, packages or wrappings for resale by those stores were not subject to the litter control tax, and therefore, the taxes it erroneously paid should be refunded. The Director, in response, argues that plaintiffs prod- *63 uets are within the plain language of the governing statutory provisions and are clearly subject to tax for the years at issue.
As noted in United Jersey Bank v. Tax. Div. Dir., 12 N.J.Tax 516, 519-20 (Tax 1992), the “litter control tax is an excise tax on the privilege of engaging in business in New Jersey as a manufacturer, wholesaler, distributor or retailer of litter-generating products measured by the gross receipts from sales of such products____”
The parties have stipulated the facts. Plaintiff, a division of Fleming Foods East, Inc., is a wholesale distributor of perishable food products to retail stores. Among the products sold and distributed by plaintiff are meats, cheeses, fruits and vegetables. These products are shipped to plaintiff in a pre-wrapped form, in bulk, in cardboard boxes. The packaging containers in which these products are eventually sold to retail customers vary and are determined by the particular manufacturer. The containers include plastic wrap for meat and cheese, plastic containers for yogurt and cream cheese and aluminum foil for certain types of cream cheese. All products are shipped by plaintiff to its customers in the same packaging as received by plaintiff from its suppliers or manufacturers.
Plaintiff filed litter control tax returns and paid the corresponding taxes for tax years 1991 and 1992. Plaintiff subsequently filed refund claims for 1991 and 1992 in the amount of $30,284 and $37,772, respectively. The Director denied the claims for refunds and plaintiff filed a written protest requesting a hearing with the Director as permitted by N.J.S.A 54:49-18. A conference between the parties was held, following which the Director issued a final determination upholding the denial of plaintiffs refund claims. Thereafter, plaintiff filed a complaint with this court challenging the Director’s denial of plaintiffs claims for refund of litter control taxes.
The Clean Communities and Recycling Act, N.J.S.A. 13:1E-92 to -99.43 was amended by L.1985, c. 533, § 6, N.J.S.A. 13:1E-99.1, to provide a tax on the sale of litter-generating *64 products. The legislative design of the litter control tax is to provide funds to finance a statewide anti-litter program. See Senate Revenue, Finance and Appropriations Committee Statement to L. 1986, c. 187 (adding further provisions to L.1985, c. 533). As I have previously noted, the litter control tax is measured by the gross receipts fi*om the sale of litter-generating products. Consequently, the taxing scheme requires an identification of all sales of litter-generating products as defined by the statute. “Litter-generating products” are defined in N.J.S.A 13:lE-94.e. as follows:
“Litter-generating products" means the following specific goods [1] which are produced, distributed or purchased in disposable containers, packages or wrappings; or [2] which are not usually sold in packages, containers, or wrappings but which are commonly discarded in public places; or [3] which are of an unsightly or unsanitary nature, commonly thrown, dropped, discarded, placed, or deposited by a person on public property, or on private property not owned by him:
(1) Beer and other malt beverages;
(2) Cigarettes and tobacco products;
(3) Cleaning agents and toiletries;
(4) Distilled spirits;
(5) Food for human or pet consumption;
(6) Glass containers sold as such;
(7) Groceries;
(8) Metal containers sold as such;
(9) Motor vehicle tires;
(10) Newsprint and magazine paper stock;
(11) Drugstore sundry products, but not including prescription drugs or nonprescription drugs;
(12) Paper products and household paper;
(13) Plastic or fiber containers made of synthetic material and sold as such, but not including any container which is routinely reused, has a useful life of more than one year and is ordinarily sold empty at retail;
(14) Soft drinks and carbonated waters; and
(15) Wine;
[Emphasis added.]
The Director has adopted a regulation, N.J.AC. 18:38-3.1, which further defines the legislative classifications outlined in N.J.SA 13:1E-94e. In relevant part, N.J.AC. 18:38-3.1 provides:
*65 (a) Litter-generating products means the 15 categories of products listed in (b) below which meet any of the following conditions:
1. They are produced, distributed or purchased in disposable containers, packages or wrappings; or
2. They are not usually sold in packages, containers or wrappings but are commonly discarded in public places; or
3. They are of an unsightly or unsanitary nature commonly thrown, dropped, discarded, placed or deposited by a person on public property, or on private property not owned by him.
(b) It is presumed that all products in the categories listed below satisfy at least one of the conditions stated in (a) above and qualify as a litter-generating product.
1. Beer and other malt beverages — means beer, lager beer, ale, stout, porter and all similar fermented malt beverages having an alcoholic content of K of 1 percent or more by volume.
2. Cigarettes and tobacco products ____
4. Distilled spirits means any beverage which contains alcohol obtained by distillation.
5. Food for human or pet consumption:
i. Food for human consumption means any substance, the chief general use of which is for human nourishment. It includes sales of meals, beverages or other prepared food by restaurants, taverns, snack bars, mobile vending operators, vending machines and other similar establishments for consumption off the premises where sold. Food and beverages (excepting beverages specifically enumerated within this subchapter as litter-generating products) sold by such establishments for consumption on the premises are deemed not to be sold in a taxable manner unless served on or with disposable plates, cups, utensils or other paper or plastic products.
7. Groceries means ail nonperishable edible products, except drugs, sold by persons in a place of business engaged in selling food for off premises consumption.
14. Soft drinks and carbonated waters means all beverages, whether carbonated or nonearbonated, except alcoholic beverages, including fruit juices, milk, carbonated water and all mixtures or dilutions of nonalcoholic beverages, but does not include nonearbonated water.
15. Wine means all wines whether known as dry wines, sweet wines, still wines or fortified wines____
[Emphasis added.]
*66 As can be seen readily, the Legislature has established three alternative tests for determining whether any one of the 15 items enumerated in the statute qualifies as a “litter-generating product.” Since it is uncontroverted, in this case, that plaintiffs perishable food products “are produced, distributed or purchased in disposable containers, packages or wrappings,” the specific goods at issue, meet the first of the three alternative tests. The controversy in this case begins when the Director asserts that plaintiffs products clearly fall within the classification of “food for human or pet consumption” as set forth in N.J.S.A. 13:lE-94.e.(5), and thus, constitute “litter-generating products” which are subject to the litter-control tax.
The Director points out that there is no dispute that the prepackaged meats, cheeses, fruits and vegetables sold by plaintiff to retail stores are products properly categorized as food. Moreover, it is uncontroverted that the food products at issue are for human consumption. Relying upon the plain language of the statutory category, “food for human ... consumption,” the Director maintains that plaintiffs sales of packaged meats, cheeses, fruits and vegetables either wrapped in plastic or aluminum or packaged in plastic containers and distributed in cardboard boxes are items which come within the “food for human ... consumption” classification of “litter-generating products.” Since they are “produced, distributed, or purchased in disposable containers, packages or wrappings,” the Director asserts that plaintiffs sales of the food products at issue were taxable and that plaintiff is not entitled to a refund of litter control taxes paid for tax years 1991 and 1992.
Plaintiff contends' that a literal interpretation of the words, “food for human ... consumption,” as urged by the Director, is not justified in this case. It is plaintiffs position that the phrase, “food for human ... consumption” does not include perishable food products sold by food stores for off-premises consumption. Since the statute itself does not provide definitions for any of the 15 categories of litter-generating products set forth in N.J.S.A. 13:lE-94.e., plaintiff relies upon the definitions for the 15 catego *67 ries provided by the Director at N.J.A.C. 18:38-3.1 in constructing its argument.
First, plaintiff points to the Director’s definition of “food for human ... consumption” at N.J.A.C. 18:38-3.1(b)(5), as being, “any substance, the chief general use of which is for human nourishment.” Plaintiff maintains that this definition is much too expansive and exceeds what the Legislature intended. To support this assertion, plaintiff notes that there are five other legislative categories[1] which would be wholly absorbed within the Director’s definition of food for human consumption, and consequently, would become surplusage and violative of the elementary rule of statutory construction that requires courts to avoid any interpretation that will render any part of a statute inoperative, superfluous or meaningless. See State v. Reynolds, 124 N.J. 559, 564, 592 A.2d 194 (1991); Paper Mill Playhouse v. Millbum Tp., 95 N.J. 503, 521, 472 A.2d 517 (1984).
Plaintiff maintains that, if the Legislature had intended the phrase “food for human ... consumption” to be read as broadly as the Director’s regulatory definition, it would not have needed to include these five other categories. For example, plaintiff demonstrates that the category identified as “groceries,” N.J.S.A. 13:1E-94.e.(7), and defined by the Director at N.J.A.C. 18:38 — 3.1(b)(7) as “all nonperishable edible products ... sold ... for off premises consumption,” readily fits within the Director’s regulatory definition of “food for human ... consumption,” which is “any substance, the chief general use of which is for human nourishment.” N.J.A.C. 18:38-3.1(b)(5). Thus, plaintiff reasons, the Director’s definition of “food for human ... consumption” renders superfluous and meaningless the category of “groceries.” Plaintiffs argument applies as well to four other categories. See N.J.S.A 13:1E-94.e.(l) (beer and malt beverages); N.J.S.A. 13:lE-94.e.(4) (distilled spirits); N.J.S.A. 13:lE-94.e.(14) (soft drinks and carbonat *68 ed waters) and N.J.S.A 13:1E-94.e.(15) (wine). As a consequence, plaintiff argues that the Legislature must have had a more restricted definition of “food for human ... consumption” in mind when it enacted the litter control tax.
It is at this point that plaintiff has difficulty in demonstrating that the Legislature intended to define “food for human ... consumption” in a manner that would deviate from its “generally accepted meaning, according to the approved usage of the language.” See N.J.S.A 1:1-1 (“In the construction of the ... statutes of this state ... words and phrases ... shall •... unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.”).
In an attempt to provide a limited definition of the phrase “food for human ... consumption,” plaintiff claims that the words should be restricted in meaning to “prepared foods sold for off-premises consumption by restaurants, taverns, snack bars, mobile vending operators, vending machines and other similar establishments” because the offered definition would be in keeping with the overall purpose of the litter control tax as plaintiff perceives that purpose.
Plaintiff contends that this would be a logical and consistent interpretation but offers nothing that illustrates that the Legislature intended such a restricted interpretation of words that have generally accepted meanings. There is nothing in the legislation,[2] *69 its legislative history or in its legislative purpose, that demonstrates, either expressly or implicitly, any intent on the part of the Legislature to limit the reach of the ordinary or plain meaning of the words “food for human ... consumption.”
In determining the meaning of a statute, it is first necessary to consider the statutory language, for “[w]hen a statute is clear on its face, a court need not look beyond the statutory terms to determine the legislative intent.” State v. Churchdale Leasing, Inc., 115 N.J. 83,101, 557 A.2d 277 (1989); see GE Solid State v. Director, Div. of Taxation, 132 N.J. 298, 307, 625 A.2d 468 (1993) ; Department of Law & Public Safety v. Bighorn, 119 N.J. 646, 650, 575 A.2d 868 (1990); State v. Butler, 89 N.J. 220,226, 445 A.2d 399 (1982); In re Jamesburg High School Closing, 83 N.J. 540, 547, 416 A.2d 896 (1980); Franklin Tp. v. Environmental Protection Dept., 7 N.J.Tax 224, 229 (Tax 1984), aff'd per curiam, 7 N.J.Tax 657 (App.Div.1985). A court’s function is to “enforce the legislative will as expressed by the clear language of the statute, not to presume the Legislature intended something other than what is expressed by its plain language.” In re Howell Tp., Monmouth County, 254 N.J.Super. 411, 419 (App.Div.1991), certif. den., 127 N.J. 548, 606 A.2d 362 (1991). Further, “ ‘[construing’ or ‘interpreting’ a clear and unambiguous statute is simply not permissible.” MacMillan v. Director, Div. of Taxation, 180 N.J.Super. 175, 177, 434 A.2d 620 (App.Div.1981), affd o.b. per curiam, 89 N.J. 216, 445 A.2d 397 (1982).
Thus, in the present case, it is necessary to first look at the plain language of N.J.S.A. 13:1E-94 to determine the intent of the Legislature. If that language is clear on its face, there is no need to look beyond the literal terms of the statute. While N.J.S.A. 13:1E-94.e. does not provide a definition of “food for human ... consumption,” statutory language should be given its plain and ordinary meaning absent any specific intent to the contrary. See State v. Mortimer, 135 N.J. 517, 532, 641 A.2d 257 (1994), cert. denied, — U.S.-, 115 S.Ct. 440, 130 L.Ed.2d 351 (1994); State v. Afanador, 134 N.J. 162, 171, 631 A.2d 946 (1993); GE Solid State, supra, 132 N.J. at 307, 625 A.2d 468; N.J.S.A. *70 1:1-1. There is nothing unclear or ambiguous about the phrase “food for human ... consumption” used in N.J.S.A. 13:1E-94.-e.(5).[3] Additionally, there can simply be no doubt that the meats, cheeses, fruits and vegetables distributed by plaintiff constitute “food for human ... consumption,” given the plain and ordinary meaning of that phrase. Further, the parties have stipulated that plaintiffs products are “distributed ... in disposable containers, packages or wrappings.” Thus, pursuant to the plain language of N.J.S.A. 13:1E-94.e., the products distributed by plaintiff constitute “litter-generating products” under N.J.S.A 13:1E-94.e.(5) and are therefore taxable pursuant to N.J.S.A 13:1E-99.1.
Plaintiffs argument is not with the ordinary and plain meaning of the legislative classifications but rather with the definitions provided by the Director in N.J.A.C. 18:38-3.1. It may be that the regulatory definitions offered by the Director are broader than intended by the Legislature and the Director may want to revisit the definitions offered in the regulation based on the arguments presented in this case. That, however, is for the Director to determine.
The issue presented in this case does not require that this court establish the outer limits of the category of “food for human ... consumption.” Nor does this matter require that I establish a definition or a series of definitions for one or more of the legislative categories. I need only determine whether plaintiffs products fall within the ordinary and plain meaning of the legislative classification at issue in this case. Clearly, they do.
Plaintiffs argument does present an additional question. That is, whether this court must limit the ordinary and plain meaning of statutory words if there appears to be an overlapping of classifications or categories.
*71 If we were to disregard the definitions offered by the Director in N.J.A.C. 18:38-3.1, and merely apply the ordinary and plain meaning of the words employed by the Legislature for each of the 15 categories of litter-generating products, several of the categories may overlap each other. The category of “food for human ... consumption” could conceivably include “beer and other malt beverages,” “distilled spirits,” “groceries,” “soft drinks and carbonated waters,” and “wine.” While plaintiff is correct in maintaining that a statute should not be construed in a manner that “will render any part of a statute inoperative, superfluous, or meaningless,”[4] see State v. Reynolds, supra, 124 N.J. at 564, 592 A.2d 194, some overlap between statutory provisions is permissible. In N.A.A.C.P. v. American Family Mut. Ins. Co., 978 F.2d 287 (7th Cir.1992), cert. denied, 508 U.S. 907, 113 S.Ct. 2335, 124 L.Ed.2d 247 (1993), the Seventh Circuit Court of Appeals discussed the Fourth Circuit’s interpretation of two sections of the Fair Housing Act, 42 U.S.C.A § 3604 and § 3605, in Mackey v. Nationwide Insurance Cos., 724 F.2d 419, 423-24 (4th Cir.1984). The N.A.A.C.P. court stated as follows:
The court’s unstated assumption is that statutes never overlap---- Yet why-should we suppose that sections of a statute do not overlap? See United States v. Naftalin, 441 U.S. 768, 778, 99 S.Ct. 2077, 2084, 60 L.Ed.2d 624 (1979) (“that there may be some overlap is neither unusual nor unfortunate.”). Conveying meaning to *72 diverse interpreters for an uncertain future is a difficult business. A wise drafter may state a principle in one section and list some applications of that principle in another, to make pellucid what ought to be apparent but which some judges (and many lay persons) will miss unless spelled out. Using the instance to restrict the principle would gum up the process of communication, inverting every effort to clarify.
[At A A CP. v. American Family Mut Ins. Co., 978 P.2d at 298.]
See also Nationwide Mut. Ins. Co. v. Cisneros, 52 F.3d 1351 (6th Cir.1995), petition for cert. filed, 64 U.S.L.W. 3349 (U.S. Nov. 2, 1995) (No. 95-714).
While there is some overlap between some of the categories enumerated in N.J.S.A. 13:1E-94.e., none of the categories is necessarily rendered “inoperative, superfluous, or meaningless.” See Reynolds, supra, 124 N.J. at 564, 592 A.2d 194. For example, “beer and other malt beverages,” “distilled spirits,” “soft drinks and carbonated waters,” and “wine” can be read to constitute types of beverages, and not necessarily “food for human ... consumption.” Emphasis added. Additionally, “groceries” are ordinarily defined as:
“articles of food and other goods sold by a grocer."
[Webster’s Third New International Dictionary 1001 (3rd ed. 1981); emphasis added.]
“Grocer” is defined as:
a dealer in staple food stuffs (as coffee, sugar, flour) and usu. meats and other foods (as fruits, vegetables, dairy products) and many household supplies (as soap, matches, paper napkins)
[Ibid.; emphasis added.]
Since, under its plain and ordinary meaning, “groceries” includes non-food items, it cannot be said to be rendered “inoperative, superfluous, or meaningless” by the “food for human ... consumption” category. See Reynolds, supra, 124 N.J. at 564, 592 A.2d 194. Thus, while there is overlap in the statutory language, N.J.S.A. 13:1E-94.e. can be read in a manner which gives effect to each of the fifteen enumerated categories.
Moreover, a fair reading of the statutory provisions defining “litter-generating products” reveals that the enumerated categories were not intended to be mutually exclusive. Instead, they provide a comprehensive listing of various categories of products envisioned as litter-generating by the Legislature. This is clear *73 from the fact that there is not only overlapping between categories but also within categories.
For example, N.J.S.A. 13:1E-94.e.(1) identifies “beer and other malt beverages” as a “litter-generating product.” This appears to be a redundant use of language since “beer” is a “malt beverage” and need not have been separately identified. The apparent purpose was to make the category speak with exceptional clarity or emphasis. Similarly, N.J.S.A 13:1E-94.e.(2) includes “cigarettes and tobacco products.” Obviously, “cigarettes” are a “tobacco product” and need not have been separately stated as a litter-generating product except to produce specificity and clarity. Another example in the legislation at issue includes “paper products and household paper.” See N.J.S.A. 13:1E-94.e.(12). Obviously, “household paper” is a “paper product” and, again, need not have been stated separately in the legislative category.
The overlapping within categories and between categories was nothing more than the Legislature’s method of making perfectly clear those categories of products that would be considered to be “litter-generating.”
Additionally, it is a fundamental duty of this court to construe a statute in a manner which advances the legislative policy and purpose. Lesniak v. Budzash, 133 N.J. 1, 8, 626 A.2d 1073 (1993); GE Solid State, supra, 132 N.J. at 308, 625 A.2d 468; Voges v. Bor. of Tinton Falls, 268 N.J.Super. 279, 285, 633 A.2d 566 (App.Div.1993), certif. denied, 135 N.J. 466, 640 A.2d 848 (1994). N.J.S.A. 13:1E-93 sets forth the legislative findings regarding the Clean Communities and Recycling Act, N.J.S.A. 13:1E-91 to -99.43. This section states the following with regard to litter:
The Legislature finds that an uncluttered landscape is among the most priceless heritages which New Jersey can bequeath to posterity; that it is the duty of government to promote and encourage a clean and safe environment; that the proliferation and accumulation of carelessly discarded litter may pose a threat to the public health and safety; that the litter problem is especially serious in a State as densely populated and heavily traveled as New Jersey; and that unseemly litter has an adverse economic effect on New Jersey by making the State less attractive to tourists and new industry and residents.
*74 [N.J.S.A. 13:1E-93]
This finding indicates that the Legislature was keenly aware of the litter problem in this State, and that one of the purposes in enacting the Clean Communities and Recycling Act was, obviously, to eliminate litter. With this legislative purpose in mind, and absent any explicit legislative indication of special meaning, this court cannot, under the guise of statutory interpretation, attempt to restrict or limit the ordinary and well-understood meaning of the phrase “food for human ... consumption.” To do so would not effectuate legislative purpose, as plaintiff maintains, but would instead abuse the interpretive process.
In sum, under the plain language of N.J.S.A 13:lE-94.e., plaintiffs packaged food products at issue in this proceeding qualify as “litter-generating products,” and are appropriately subject to the litter control tax. Consequently, the denial of plaintiffs refund claims must be affirmed.
The Tax Court Administrator is directed to issue judgment affirming the Director’s determination.

 These are beer and malt beverages, N.J.S.A. 13:1E-94.e.(1), distilled spirits, N.J.S.A. 13:1E-94.e.(4), groceries, N.J.S.A. 13:1E-94.e.(7), soft drinks and carbonated waters, N.J.S.A. 13:1E-94.e.(14) and wine, N.J.S.A. 13:1E-94.e.(15).

 The inconsistency in definitions, if it exists, was provided by the Director in his regulatory definitions, not by the Legislature in its adoption of 15 categories of litter-generating products. The Legislature has not provided a specific definition for each classification but instead has left the interpretation of the words to their generally accepted meanings, which may be put in regulatory form by the Director of the Division of Taxation. See N.J.S.A. 1:1-1; see also Service Armament Co. v. Hyland, 70 N.J. 550, 562, 362 A.2d 13 (1976) (stating that "[i]n keeping with its judicial duties, a court is bound to override an administrative construction where it is clearly contrary to the plain meaning of the statute"); Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 528-29, 197 A.2d 673 (1964) (explaining that an administrative regulation which is inconsistent with the ordinary and primary meaning of a statute's language should be disregarded).

 Plaintiff asserts that the Director has implicitly conceded that the phrase is ambiguous because he adopted a regulation defining the phrase. This assertion requires little discussion because the adoption of a regulation by the Director simply does not mean that a statutory provision is ambiguous.

 Courts normally follow this canon of construction because, as a general matter, it is a good statement of what the Legislature intends courts to do. The canon, however, is merely an aid in determining legislative intent when the words employed by the Legislature may be ambiguous. Here, the words are not ambiguous. Moreover, a mechanical application of this constructional aid should not be permitted to thwart legislative intent or purpose clearly reflected by the ordinary meaning of the language employed by the Legislature. See Schutman v. O’Reilly-Lando, 226 N.J.Super. 626, 629, 545 A.2d 241 (App.Div.1988) (explaining that where statutory language is clear and unambiguous and subject to only one interpretation, a court need go no further than that language to ascertain legislative intent); Ingraham v. Travelers Companies, 217 N.J.Super. 126, 128, 524 A.2d 1319 (App.Div.1987), aff'd o.b. per curiam, 110 N.J. 67, 539 A.2d 733 (1988) (concluding that where the language of a statute is clear, it must be applied as written, and there is no room for construction); 2A Sutherland, Statutory Construction § 46.01 at 81 (5th ed. 1992) (discussing principle that when intent of Legislature can be ascertained from the face of a statute, there is no need for construction).