592 A.2d 194

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. JAN
ERIC REYNOLDS, DEFENDANT–APPELLANT.

Argued March 11, 1991—Decided July 9, 1991.

*Kathryn A. Brock,* Designated Counsel, argued the cause for appellant (*Wilfredo Caraballo,* Public Defender, attorney).

*John G. Holl,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

O'HERN, Justice.

The central question posed in this defendant's appeal is whether an asserted statutory violation in the jury-selection process requires that a jury verdict of guilty be set aside. There were two parts to the question as posed below: (1) whether the disqualification from jury service of those connected with the "administration of justice" under *N.J.S.A.* 2A:69–1 applies to members of the law-enforcement community, and (2) whether defendant's failure to challenge such a juror specifically on that ground constituted a waiver of his right to object. Because of our disposition of the first question, we do not determine whether the failure of counsel to refer to the statute acted as a waiver of any fair-trial right. We hold that *N.J.S.A.* 2A:69–1 does not automatically disqualify from jury service those in the law-enforcement community, and that in the circumstances of this case their presence on the jury did not deprive defendant of his right to a fair trial and does not require reversal of his conviction. Because the other issues raised were correctly decided by the Appellate Division, we affirm its judgment.

I

In the early morning hours of Wednesday, October 23, 1985, the victim (referred to here as Jane Jones) was awakened by an intruder in her home. Jones recognized the voice of the intruder as that of defendant, the husband of her babysitter. He had a gun against her head.

Defendant first asked Jones if she had any money in the house. After defendant took the money, which amounted to approximately $100, he sexually assaulted his victim. Defendant then stabbed Jones repeatedly in an apparent attempt to prevent her from later identifying him. Although her injuries were massive, Jones survived the assault. She struggled to the telephone and called the police, informing them that she had been raped and stabbed. Jones gave the police a brief descrip-

tion of her attacker. She later positively identified defendant as her assailant.

Soon after the attack, the police dispatcher broadcast the suspect's description that had been given by Jones. An officer observed defendant leaving a field in the area and stopped to investigate. Seeing a handgun in defendant's waistband, the officer pulled his own gun and forced defendant across the hood of the car. Defendant flung a blood-soaked hat that he held in his hand across the hood of the car, leaving a streak of blood. After handcuffing defendant, the officer searched him and found a buck knife, a pocketknife, a woman's stocking, a loaded revolver, and approximately $100.

Defendant was indicted for aggravated sexual assault, attempted murder, and several other crimes. He was convicted on all counts and sentenced to a term of 120 years with a parole-ineligibility period of sixty years.

Before the Appellate Division, defendant argued that his conviction should be reversed because two jurors had been empaneled in violation of N.J.S.A. 2A:69-1, which disqualifies any person "who through his office, position or employment is either directly or indirectly connected with the administration of justice." The jurors in question are juror Raymond Kaminski, an investigator at the Division of Criminal Justice, and juror David Dembe, a Deputy Attorney General in the Division of Law assigned to the Lottery Commission. The Appellate Division affirmed the conviction, but remanded for resentencing. The court found that defendant's failure to challenge Dembe during *voir dire* constituted a waiver of any objections to that juror, and that his challenge of Kaminski was inadequate because defendant did not cite the relevant statute nor use one of his peremptory challenges to remove the juror. One member of the panel dissented, finding that the failure of the trial court to remove juror Kaminski for cause had denied defendant an impartial jury.

Defendant appeals the issue addressed by the dissent as of right. *R.* 2:2–1(a). This Court also granted defendant's petition for certification on other issues decided adversely to him by the Appellate Division. 122 *N.J.* 402, 585 *A.*2d 401 (1990).

## II

*N.J.S.A.* 2A:69–1 does not by its terms disqualify from general jury service members of the law-enforcement community. If being connected with "the administration of justice" ineluctably signified the disqualification of all members of the law-enforcement community, the next provision of the act that grants an exemption from service for members of police forces and fire departments would seem unnecessary. *See N.J.S.A.* 2A:69–2. On its face, that provision, exempting fire fighters, police officers, teachers, physicians, and others, would appear to give the otherwise-qualified class member the right to opt out of jury service. That right, implying the correlative right to serve on the jury, is inconsistent with a reading of *N.J.S.A.* 2A:69–1 automatically to exclude members of the law-enforcement community from jury service. A construction that will render any part of a statute inoperative, superfluous, or meaningless, is to be avoided. *Hoffman v. Hock,* 8 *N.J.* 397, 406–07, 86 *A.*2d 121 (1952), *quoted in Paper Mill Playhouse v. Millburn Township,* 95 *N.J.* 503, 521, 472 *A.*2d 517 (1984); *see also* N. Singer, *Sutherland Statutory Construction* § 46.06 (Sands 4th ed. 1984) (each provision of statute should be given effect). The more logical interpretation, then, is that *N.J.S.A.* 2A:69–1 was intended to apply only to judges and court personnel. After all, they are the ministers of justice. Moreover, many, if not most, of the matters that pass through the courts do not involve criminal-law enforcement. If members of the law-enforcement community do not opt out of jury service, they are ordinary jurors available to serve on general jury panels. We have no sense that the ordinary citizen-litigant would feel it

inappropriate to have a member of the law-enforcement community sit as a juror in a contract or products-liability matter.[1]

On the other hand, we can well imagine that a criminal defendant would not be so easily assuaged. Although strictly speaking an excusal for cause may not be required, prudence counsels that a court, on request of a defendant in a criminal case, should be inclined to excuse a member of the law-enforcement community.

### III

Having said that, however, it does not follow that the presence of a member of the law-enforcement community on a jury constitutes grounds for reversal. Both counsel and the court questioned juror Kaminski and juror Dembe during *voir dire*. At the time of trial, Dembe, the Deputy Attorney General, represented the Lottery Commission in two cases in which defense counsel here represented the opposing parties. When asked whether that relationship would interfere with his ability to be fair and impartial as a juror, Dembe testified that it would not. Defense counsel did not seek to remove Dembe at *voir dire*. At the close of evidence, defense counsel sought to have both Dembe and Kaminski designated alternates and removed from the jury for purposes of deliberation. Defense counsel also noted that he had received a letter from Dembe during trial regarding one of the cases in which they were both involved. The letter made no mention of this case. The trial court denied defense counsel's request.

Juror Kaminski also knew defense counsel professionally as defense counsel had once worked in the Division of Criminal Justice with Kaminski. At *voir dire*, the court asked Kaminski

---

[1] We note in passing that the 1982 *Report of the Jury Utilization and Management Task Force* recommended that the language disqualifying those persons "connected with the administration of justice" be eliminated from *N.J.S.A.* 2A:69–1, although the Legislature has taken no action on that recommendation.

if that would incline him to favor the defense. He replied, "I don't know. I can't answer that." Soon after, however, Kaminski testified that his relationship with defense counsel would not affect his ability to be a fair and impartial juror. The defense requested that Kaminski be removed for cause on the basis of his involvement with law enforcement. The court denied the request.

Thus, this is not a case in which a juror failed to disclose information about his or her attitudes and so deprived the defendant of a full opportunity to select a fair and impartial jury. *See In re Kozlov*, 79 *N.J.* 232, 239, 398 *A.*2d 882 (1979) (when juror fails to disclose potentially prejudicial material, party may be regarded as having been denied fair trial). Nor is this a case like *Panko v. Flintkote Co.*, 7 *N.J.* 55, 80 *A.*2d 302 (1951), in which a juror deliberately concealed the fact that he had indirectly acquired extraneous information from one of the parties to the case. Here, both juror Dembe and juror Kaminski fully disclosed in *voir dire* their relationship with defense counsel and their involvement with the law-enforcement community.

█ In the case of juror Dembe, defendant raised no objection whatsoever to his presence on the jury during trial. Under *Rule* 1:8–3(b), a challenge of a juror for cause must be made before any evidence is presented. Yet it was not until the jury was about to retire that defendant claimed that both Dembe and Kaminski should be alternate jurors because of their employment positions.

In the case of juror Kaminski, defendant challenged him during *voir dire*, asserting that he should be excused on the basis of his connections with "the enforcement of the penal laws of this State," and his resultant "proclivity to assume that State Police don't lie." The questioning of Kaminski during *voir dire* also focused on Kaminski's former association with defense counsel as a potential reason for disqualification.

■ As juror Kaminski was not statutorily disqualified, the question is whether he should have been excused for cause. A trial court may properly allow a challenge for cause in order to ensure that each juror is "impartial, unprejudiced and free from improper influences." *State v. Jackson*, 43 *N.J.* 148, 158, 203 *A.*2d 1 (1964), *cert. denied*, 379 *U.S.* 982, 85 *S.Ct.* 690, 13 *L.Ed.*2d 572 (1965). The Court in *Jackson* reversed the defendant's conviction because the trial court failed to excuse a juror who was "a close friend" of one of the testifying police officers. *Id.* at 157, 203 *A.*2d 1. Unlike the juror in that case, however, accepting juror Kaminski's representation of fairness here does not "run[ ] counter to human nature." *Id.* at 160, 203 *A.*2d 1. There is no reason to believe that Kaminski was in any way less than candid when he assured counsel and court that although he was employed as an investigator by the Division of Criminal Justice, his work had no connection with the case, and he could be a fair and impartial juror.

The trial court here specifically noted that the demeanor of both Kaminski and Dembe was "outstanding." The court observed that "[t]hey were obviously intelligent, they obviously knew what was going on, they were obviously totally impartial." Often a prospective juror's demeanor in the courtroom can be as revealing as his or her words. *See State v. Conyers*, 58 *N.J.* 123, 145, 275 *A.*2d 721 (1971).

Given the responses by juror Kaminski with respect to his fairness and openness, we find that the failure to excuse the juror does not constitute grounds for reversal. The investigative work of the State Division of Criminal Justice is not (at least primarily) in the area of crimes of personal violence. See *N.J.S.A.* 52:17B–98 (Legislature provides for general supervision of criminal justice in the State by Attorney General in recognition of threat posed to society by existence of organized crime). We are satisfied that juror Kaminski's answers at *voir dire* did not require excusal for cause.

We further note that defendant had eight peremptory challenges remaining that he could have used to remove Kaminski. We need not renew the debate about whether the incorrect denial of a single challenge for cause requires reversal when all peremptories are used. See *State v. Bey*, 112 *N.J.* 123, 154–55, 548 *A.*2d 887 (1988). We are satisfied that the issue in this case involves not the erroneous failure of a court to excuse a biased juror but, at worst, the failure of a court to exercise an extra measure of caution concerning this class of jurors.

■ To avoid challenges such as this, we believe that in criminal cases a court, on request of a defendant, should tend to favor excusal of a member of the law-enforcement community. In grand-jury proceedings, the supervising judge should exercise similar caution. *See State v. Murphy*, 110 *N.J.* 20, 538 *A.*2d 1235 (1988). Obviously, when a juror is subject to a statutory disqualification, *e.g.*, *N.J.S.A.* 2A:69–1 (excluding convicted criminals); *N.J.S.A.* 2A:69–4 (excluding jurors who have had prior jury service within one year), there is no room for discretion in responding to a request for removal of that juror.

## IV

Defendant raises several other challenges to his conviction in his petition for certification. None of those claims warrants reversal, and we thus discuss them but briefly.

■■ Defendant argues that trial counsel's failure to object to juror Dembe at *voir dire* constitutes ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that defense counsel's performance was objectively deficient and (2) that defendant suffered prejudice. *Strickland v. Washington*, 466 *U.S.* 668, 687, 104 *S.Ct.* 2052, 2064, 80 *L.Ed.*2d 674, 693 (1984); *State v. Fritz*, 105 *N.J.* 42, 58, 519 *A.*2d 336 (1987). Defense counsel's decision not to challenge Dembe during *voir dire* clearly falls within the range of reasonable tactical decisions. Defense counsel was acquainted with Dembe professionally, and likely

chose not to challenge Dembe because he believed that Dembe's presence on the jury would be consistent with defendant's interests. That defense counsel later changed his mind and sought to have Dembe removed does not evidence deficient conduct.

 Defendant also argues that the evidence collected at his arrest should be suppressed because the police did not have reasonable suspicion to stop him on the morning of the crime. *See State v. Davis,* 104 *N.J.* 490, 517 *A.*2d 859 (1986). The trial court found that defendant's proximity to the crime in both time and space and that his similarity to the general description of the suspect were sufficient to generate a reasonable suspicion. We agree. The evidence at trial was properly admitted as the product of a lawful stop and arrest.

 Defendant argues that the destruction of certain tapes by the police constitutes a *Brady* violation warranting reversal. *See Brady v. Maryland,* 373 *U.S.* 83, 83 *S.Ct.* 1194, 10 *L.Ed.*2d 215 (1963). At issue are the tapes of radio broadcasts by which the arresting officer learned of the crime and received a description of the suspect. Defendant appears to contend that the tapes would have shown that the officer did not have a reasonable suspicion to stop defendant. No evidence has been presented that shows a disparity between the description given by the victim to police and the description that formed part of the basis for the reasonable suspicion to stop defendant. Nor has defendant presented any evidence of bad faith by the police. As conceded by defendant, the police erase those tapes as a matter of routine. Because the tapes did not possess any apparent exculpatory value, and because their destruction did not involve bad faith, we reject defendant's *Brady* argument.

Finally, defendant challenges several evidentiary rulings of the trial court. We find that those rulings were well within the discretion afforded the trial court and we reject defendant's arguments.

The judgment of the Appellate Division is affirmed.

*For affirmance* —Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN—7.

*Opposed*—None.