833 A.2d 72 (2003)
363 N.J. Super. 353
Frankie CRUZ, Plaintiff-Appellant,
v.
Roy C. TROTTA and Donna M. Trotta, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted September 23, 2003.
Decided October 20, 2003.
*73 Nathan A. Friedman, Cherry Hill, attorney for appellant (Joshua A. Friedman, Los Angeles, CA, on the brief).
Joseph P. Savio, attorney for respondents.
Before Judges SKILLMAN, COBURN and WELLS.
The opinion of the court was delivered by COBURN, J.A.D.
In this two-vehicle, personal injury negligence case, plaintiff appeals from a judgment confirming the jury's verdict in favor of defendant and from an order denying his motion for a new trial. The jury found that the defendant-driver was without fault; consequently, it did not consider plaintiff's negligence. The primary issue is whether the trial judge erred in his jury charge on a section of the Motor Vehicle Code which prohibits crossing a "No Passing" line, such as a double yellow line dividing a two-way highway, except when the driver's lane is "obstructed and impassable." N.J.S.A. 39:4-86. More specifically, the question is whether the evidence justified submitting the statutory exception to the jury as bearing on the defendant-driver's conduct when the road was not impassable but may have been obstructed. Plaintiff also contends that the verdict was against the weight of the evidence, that evidence about the presence of his passenger was inadmissible, and that the judge erred in charging sections of the Motor Vehicle Code as applicable to his conduct mainly because of the nature of the vehicle he was operating, and in one instance because of the section's claimed irrelevance. We affirm.

I
On a sunny day in August 1997, in Vineland, plaintiff decided to give a seven-year *74 old girl a ride on a Go-Ped. This vehicle, which did not have a rearview mirror, had a small gasoline engine in the rear, a platform on which the driver stands, and a "T-Bar" extending above the front wheel. The hand brake was attached to one side of the "T" and the accelerator was attached to the other side of the "T." According to plaintiff, it was designed to be driven by one person. He placed the girl between himself and the "T-Bar," and she held on to the vertical shaft of the "T," which turned with the movement of the "T" by the driver. Her grip could impede the driver's ability to turn. Plaintiff drove with his passenger onto Franklin Road, a two-way public street, with one lane going in each direction, separated by a double yellow line.
After traveling a short distance at a speed of about ten to fifteen miles per hour in the westbound lane, plaintiff decided to turn left into Sherwood Avenue. Either while he was still in the westbound lane, or after he had entered the eastbound lane, he became aware of a truck, which had come from his rear, passing on his left. The truck was either entirely in the eastbound lane, which seemed to be plaintiff's recollection, or was straddling the double yellow line, which was its driver's recollection.
According to the truck driver, defendant Roy C. Trotta, he had approached the Go-Ped at a speed of fifteen to twenty miles per hour and had sounded his horn a few times to warn plaintiff that he was passing. Plaintiff denied hearing the horn. Both agree that plaintiff began his left turn without signaling. The right side of the truck, either at its front or near its front wheel, came into contact with plaintiff, who suffered serious personal injuries. On seeing the truck a moment or two before the accident, plaintiff picked up his rider and threw her to "safety" in the westbound lane.

II
We consider first the statute governing no-passing lines, N.J.S.A. 39:4-86, which provides in pertinent part as follows:

Except when otherwise directed by a duly constituted traffic or police officer or when the lane in which he is operating is obstructed and impassable, the driver of a vehicle shall not cross an appropriately marked "No Passing" line in a "No Passing" zone....

[Emphasis added.]
After reading the statute to the jury, the judge charged that it should determine whether defendant was justified in crossing the double yellow line because the road was obstructed and impassable. If the road was not so impaired, the jury was told to consider the otherwise admitted violation as evidence of negligence.[1] The statute does not further define "obstructed and impassable," and the trial judge left that phrase undefined.
When a statute is clear, its plain meaning is the law unless its spirit is inconsistent with the literal sense of its terms. Franklin Tower One, L.L.C. v. N.M., 157 N.J. 602, 613, 725 A.2d 1104 (1999). When a statute is ambiguous, we interpret it in accordance with the overall legislative intent. Ibid. If consistent with the legislative intent, all of a statute's words should be given effect without rendering any of them "inoperative, superfluous *75 or meaningless." State v. Reynolds, 124 N.J. 559, 564, 592 A.2d 194 (1991). Unless otherwise indicated by the Legislature, words are assumed to have their ordinary meaning. Burns v. Belafsky, 166 N.J. 466, 473, 766 A.2d 1095 (2001). In an opinion construing a section of the Motor Vehicle Code, the Court put it this way: "The ordinary and popular meaning is to be given to words in a statute unless it is evident that they are employed in a technical sense." State v. Joas, 34 N.J. 179, 187, 168 A.2d 27 (1961).
In this case, the critical statutory phrase is "obstructed and impassable." Since there is no contrary legislative indication, we understand "obstructed" and "impassable" to have their ordinary and popular meanings. In addition, the question arises whether the word "and" should be understood here in its usual conjunctive sense or whether it should be construed to be disjunctive. The principle governing this issue is settled. "The words `or' and `and' are [often] used interchangeably, and the determination of whether the word `and' as used in a statute should be read in the conjunctive or disjunctive depends primarily upon the legislative intent." Howard v. Harwood's Rest. Co., 25 N.J. 72, 88, 135 A.2d 161 (1957).
It is often easier to say that a word should carry its ordinary and popular meaning than to say what that meaning is. See Roget's International Thesaurus vii-xv (New Edition 1960). Moreover, as Roget further observed, "[i]t is hardly possible to find two words having in all respects the same meaning, and being therefore interchangeable; that is, admitting of being employed indiscriminately, the one or the other, in all their applications." Id. at xi. With those thoughts in mind, we consider "obstructed" and "impassable."
"Obstruct" has been defined, in part, as meaning "1. to block or close up with an obstacle; make difficult to pass ....; 2. to interrupt, hinder, or oppose the passage, progress, course, etc. of." Webster's Unabridged Dictionary of the English Language 1338 (2d ed.2001) (emphasis added). Its synonyms include such words as "impede" and "slow." Ibid.
"Impassable" has been defined, in part, as meaning "1. not passable; not allowing passage over, through, along, etc." Id. at 959.
While these words are similar, the definitions and our common understanding suggest a difference. "Impassable" implies a total blockage, while "obstructed" may be used to describe a total blockage or a situation where movement is only impeded or slowed down. To construe them as meaning the same thing in this context would violate the rule that each word in a statute should be given effect. State v. Reynolds, supra, 124 N.J. at 564, 592 A.2d 194. Therefore, if possible we should recognize the distinctions in their meanings noted above.
The word "and" between "obstructed" and "impassable" does not prevent our recognition of the distinct meanings of those words because "and" may be read as "or" if necessary to carry out the legislative intent. Howard, supra, 25 N.J. at 88, 135 A.2d 161. Obviously any impassable road is obstructed; on the other hand, it is just as obvious that an obstructed road may not be impassable. If the Legislature had intended that complete impassability would be required before a driver could cross a no-passing line it would not have had to precede "impassable" with "obstructed." Therefore, we infer that the Legislature added the word "obstructed" because it intended to permit driving over the no-passing line in some circumstances when a driver was faced with an obstruction to his progress that made the road less than impassable.
It seems that only one other jurisdiction has confronted the meaning of "obstruction" *76 in a similar traffic statute in the context of determining whether the issue should be submitted to the jury. In Smith v. Lott, 246 Ga. 366, 271 S.E.2d 463 (1980), the court considered "whether a combine driven at a speed of eight to seventeen miles per hour on a public road where the speed limit is 55 miles per hour could be found by a jury to be an obstruction." Id. at 464. Rejecting the argument that an object has to be stationary to be an obstruction, the court said this:
We hold there is no such requirement. A motor vehicle may be an obstruction when it is operated on a public road in a manner which could not be generally or reasonably anticipated, taking into account all of the circumstances and conditions present at such time and place, and thereby hinders or impedes the proper travel on such road. Except in clear and palpable cases, the issue of when a vehicle is so operated is one for the jury.

[Ibid.]
We conclude that our Legislature's use of "obstructed" was intended to express the concepts endorsed by the Georgia Supreme Court.
State v. Joas, supra, though it deals with a different traffic law, provides indirect support for submitting the issue to the jury in these circumstances. The case concerned an attack on the constitutionality of N.J.S.A. 39:4-97, which forbids driving "carelessly, or without due caution and circumspection, in a manner so as to endanger, or be likely to endanger, a person or property ...." The Court upheld the statute, observing, in part, as follows:
The clear and apparent purpose of the statute here involved illustrates the impossibility of delineating in precise detail all of these innumerable acts which could constitute driving a vehicle "carelessly or without due caution and circumspection, in a manner so as to endanger, or be likely to endanger, a person or property." Mind of man is incapable of visualizing in advance all possible factual situations which would fall within these categories. It is impossible to catalogue in advance each possible course of conduct which would violate the statute. And yet the general words have a sufficient common connotation that the ordinary man is apprised with a reasonable degree of certainty of that which is proscribed. The words of N.J.S.A. 39:4-97 express ideas which find adequate interpretation in common usage and understanding and hence the statute meets the constitutional requirements.

[34 N.J. at 187, 168 A.2d 27.]
Since there are virtually endless possible variations that might or might not constitute obstructions, the Court's comments apply equally to N.J.S.A. 39:4-86. While this case may be close, we cannot say as a matter of law that the Go-Ped, which may have been going as slow as ten miles per hour in a twenty-five mile per hour zone, did not amount to an obstruction to proper travel on the road, particularly when its driver failed to respond to defendant-driver's horn.

III
Plaintiff argues that the verdict was against the weight of the evidence and that the trial court erred in charging that in evaluating his conduct the jury could consider the following statutes: N.J.S.A. 39:3-71, which in pertinent part provides that "[e]very motor vehicle shall have rear view mirrors so located and angled as to give the driver adequate rear view vision"; N.J.S.A. 39:4-69, which provides that "no operator shall knowingly allow a person to ride on ... a portion ... [of a vehicle] not designed or intended for conveyance of passengers"; N.J.S.A. 39:4-123(b), which governs left turns on two-way roads; and N.J.S.A. 39:4-126, which requires a vehicle operator to give appropriate signals by *77 hand or otherwise before turning. Plaintiff's objections to those charges are based in general on the theory that the Go-Ped is not a motorcycle under the Motor Vehicle Code, and in part on the design of the Go-Ped. He also contends that N.J.S.A. 39:4-69 was irrelevant even if the Go-Ped is a motorcycle. Although the arguments noted under this section of our opinion are entirely without merit, R. 2:11-3(e)(1)(E), partly because the jury never reached the question of plaintiff's fault, we will comment on some of them briefly.
N.J.S.A. 39:1-1 defines a "motorcycle" as including "all motor-operated vehicles of the bicycle or tricycle type, except motorized bicycles as defined in this section, whether the motive power be a part thereof or attached thereto and having a saddle or seat with driver sitting astride or upon it or a platform on which the driver stands." See LaBracio v. Northern Insurance Co. of New York, 66 N.J.Super. 216, 218, 168 A.2d 682 (Law Div.1961), which interpreted this section as applicable to a motor scooter. In an attempt to avoid a pertinent equipment regulation for motorcycles, the presence of a rearview mirror, plaintiff argues that the Go-Ped is a motorized bicycle, but that is not true. A motorized bicycle is defined, in pertinent part, as a "pedal bicycle having a helper motor." N.J.S.A. 39:1-1. A Go-Ped has no pedals and its motor is its only means of power. It obviously fits the statutory definition of a motorcycle. A motorcycle must have a rearview mirror, both because it is a motor vehicle governed by N.J.S.A. 39:3-71 and because N.J.A.C. 13:20-33.62 so provides. And, needless to say, it must be operated in accordance with the traffic laws.
Plaintiff specifically argues that the judge should not have charged N.J.S.A. 39:4-69 for two reasons: because there was no evidence that the Go-Ped was designed to carry only one person, and because there was no evidence the passenger's presence had a causal connection with the accident. Of course, "[c]ausation must appear in any case to connect the violation of the statute and the accident...." Moich v. Passaic Terminal & Transp. Co., Inc., 82 N.J.Super. 353, 369, 197 A.2d 690 (App.Div.1964). According to plaintiff, when he saw the truck and began trying to maneuver to avoid contact with it, he first, or at the same time, picked up his passenger and threw her to the right so that she would not be hit by the truck. Had this jury considered plaintiff's fault, it might well have inferred that without the passenger's presence plaintiff could have avoided the accident entirely. Based on common sense, buttressed by plaintiff's admission, the jury was certainly entitled to find that the Go-Ped was not designed to carry a passenger.
Affirmed.
NOTES
[1] That concept was further correctly explained in accordance with Model Jury Charge (Civil), § 5.20D.1 and Phillips v. Scrimente, 66 N.J.Super. 157, 168 A.2d 809 (App.Div.1961). Since this section of the Motor Vehicle Code does not incorporate a common law standard of care, it would have been wrong to charge that violation of the statute constituted negligence. See Eaton v. Eaton, 119 N.J. 628, 642-43, 575 A.2d 858 (1990).