617 S.E.2d 491

**MT. STATE BIT SERVICE, INC., A West Virginia Corporation, Petitioner Below, Appellant,**

v.

**STATE of West Virginia, Department of Tax and Revenue, Respondent Below, Appellee**

No. 31735.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 11, 2005.

Decided Feb. 10, 2005.

Dissenting OPinion of Justice Starcher March 17, 2005.

Concurring Opinion of Justice Starcher July 14, 2005.

# 142

James A. Gianola, Michelle L. Bechtel, Gianola, Barnum & Wigal, L.C., Morgantown, West Virginia.

Darrell V. McGraw, Jr., Attorney General, A.M. "Fenway" Pollack, Assistant Attorney General, Charleston, West Virginia.

ALBRIGHT, Chief Justice:

Mt. State Bit Service, Inc. (hereinafter referred to as "Taxpayer") appeals from the June 17, 2003, ruling of the Circuit Court of Monongalia County upholding the assessment of a use tax against Taxpayer in connection with its out-of-state purchase of blasting materials that were subsequently used in this state. Arguing that it is entitled to an exemption from the use tax based on its status as either a producer of natural resources or as a contractor, Taxpayer seeks relief from the tax assessment at issue. After careful review of the arguments raised by Taxpayer in conjunction with the applicable statutes and regulations, we conclude that the lower court committed error in upholding the tax assessment. Accordingly, the decision of the lower court is reversed.

## I. Factual and Procedural Background

The business that Taxpayer operates in Morgantown, West Virginia, is primarily involved in the sale of explosive materials and blasting supplies, but secondarily includes the direct use of those blasting materials by Taxpayer. While ninety percent of Taxpayer's business involves the sale of blasting materials and supplies, the remaining ten percent of the business involves the use of Taxpayer's own employees to perform blasting services for its customers. The provision of these blasting services, and not the sale of explosive materials, is the subject of the use tax assessment at issue in this appeal.

As the result of an audit performed by the West Virginia Department of Tax and Revenue ("Tax Department"), Taxpayer was assessed a use tax[1] in the amount of $78,443 for the 1990, 1991, and 1992 tax periods[2] and interest in the amount of $11,245[3] for a total due of $115,152. The use tax was assessed on supplies Taxpayer purchased from out-of-state vendors that it then used to perform blasting services for a small percentage of its customers.

Taxpayer filed a timely petition for reassessment, arguing that the use tax assessment was improperly levied against it based on its entitlement to a tax exemption as either a producer of natural resources[4] or as a contractor.[5] By decision dated July 20, 1998, an administrative law judge affirmed the use tax assessment on the grounds that neither of the two exemptions raised by Taxpayer were applicable. Taxpayer appealed the administrative decision to the circuit court, who affirmed the decision by order dated June 17, 2003. Through this appeal, Taxpayer seeks relief from the lower court's affirmance of the use tax assessment.

## II. Standard of Review

■ Our review in this case is *de novo*, given the tax questions presented which require interpretation of both statutes and regulations promulgated in furtherance of those statutory provisions. *See* Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. 573, 466 S.E.2d 424 (1995) (holding that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review"). We proceed to review this matter to determine whether the circuit court committed error by upholding the administrative affirmance of the use tax assessment issued against Taxpayer.

---

1. Taxpayer was also assessed a consumer sales and service tax as a result of the audit, but that assessment is not the subject of this appeal as Taxpayer conceded its obligation to pay such tax during the administrative proceedings below.

2. The use tax assessment covered the period of February 1, 1990, to December 31, 1992.

3. The interest figure will accrue until the date of actual payment.

4. *See* W.Va.Code § 11–15–9(g) (1987).

5. *See* W.Va.Code § 11–15–8a (1989) (Repl.Vol. 1991).

## III. Discussion

The first exemption asserted by Taxpayer is referred to as the "producer" exemption and it extends relief from taxation to

[s]ales of property or services to persons engaged in this state in the business of contracting, manufacturing, transportation, transmission, communication or in the *production of natural resources:* Provided, That the exemption herein granted shall apply only to services, machinery, supplies and materials *directly used* or consumed in the businesses or organizations named above . . . .

W.Va.Code § 11–15–9(g) (1987) (emphasis supplied).

To determine who is engaged in the "production of natural resources," we look to the definition provided by statute. This term encompasses entities who engage in the

performance, by either the owner of the natural resources or another, of the act or process of exploring, developing, severing, extracting, reducing to possession *and* loading for shipment for sale, profit or commercial use of any natural resource products and any reclamation, waste disposal or environmental activities associated therewith.

W.Va.Code § 11–15–2(t) (1987) (emphasis supplied).

Viewing its blasting services as falling within the delineated mining activity of severing,[6] Taxpayer asserts that it qualifies as a producer of natural resources. Conversely, the Tax Department views the statutory inclusion of the term "and" as significant and takes the position that unless a taxpayer engages in the complete list of activities or operations identified within the definition of "production of natural resources," the subject exemption cannot be invoked. *See id.*

The position advocated by the Tax Department—requiring an all or none approach to the exemption's application—does not withstand scrutiny. The Tax Department's contention that the exemption is available to only those entities who engage in the complete list of activities or operations designated to embody the "production of natural resources" quickly collapses upon examination. It stands to reason that although business entities may engage in several of the qualifying activities, they will not necessarily engage in each and every one of the statutorily-delineated list of activities or operations that begins with exploring and ends with loading for shipment. To illustrate this point, we are doubtful that the Tax Department denies the exemption to a company that comes in to work a coal mine after the exploration stage has been completed based solely on the taxpayer's non-participation in the development stage of the mining process. In addition, the inclusion of activities that are clearly limited in scope such as reclamation, waste disposal, or other environmental activities as operations that qualify for the exemption suggests a legislative intention of extending the exemption to entities that perform less than the full gamut of delineated mining activities or operations.

We are not persuaded by the Tax Department's argument that the exemption at issue was only intended to apply to those entities who pay the severance tax.[7] As Taxpayer correctly explains, the regulations make clear that the producer exemption was not written to solely benefit those entities paying severance taxes. Pursuant to the regulations, an entity who pays severance tax, in comparison to non-severance tax payers, does receive a benefit. By paying severance taxes, a taxpayer is exempted from having to meet the "direct use" test that ordinarily must be fulfilled before the producer exemption can be implemented. *See* 110 W.Va.R. *Taxation* § 15.123.4.3.4.; W.Va.Code § 11–15–9(g). Regardless of the benefit severance tax payers receive by not having to prove direct use for items on which they paid severance tax,

6. While the term "severing" is not defined by statute, the regulations provide that this mining related activity "means the physical removal of the natural resources from the earth or waters of this State by any means or from the waste or residue of prior mining." 110 W.Va.R. *Taxation* § 15.123.4.3.2.

7. The Tax Department suggests that the purpose of the legislative and statutory scheme under consideration was to benefit those entities who pay severance taxes.

the producer exemption is still available to non-severance tax payers. To qualify for the exemption, the non-severance tax paying entities are simply required to demonstrate that the goods or services at issue are "directly used or consumed." W.Va.Code § 11–15–9(g).[8]

As a non-severance tax paying entity, Taxpayer argues that it meets the "direct use" test based on the statutory definition, which defines direct use to include the "[c]ausing [of] a direct physical, chemical or other change upon property undergoing ... production of natural resources...." W.Va.Code § 11–15–2(n)(2)(B). When it engages in blasting services for its customers, Taxpayer maintains that the changes to the property caused by the performance of such blasting activities squarely fall within the statutory definition provided for "direct use." *See id.* As further support for this position, Taxpayer cites the regulatory specification of "[b]lasting equipment and explosives" as "examples of exempt items" based on the direct use of such items "when used by a person engaged in the business of production of natural resources." 110 W.Va.R. *Taxation* §§ 15.123.4.3.7; 15.123.4.3.7.b.4.

Given the statutory definition of direct use combined with the clear regulatory identification of blasting materials as items constituting direct use, the only hurdle Taxpayer must clear to assert the producer exemption is to come within the definition of "[p]roduction of natural resources." W.Va.Code § 11–15–2(t). To resolve the critical issue of whether Taxpayer fulfills the statutory definition of being a producer of natural re-

sources, we turn again to the regulations for guidance in resolving this definitional query. Pursuant to applicable regulatory provisions,

> Contract miners or cutters are considered to be engaged in the production of natural resources and their purchases are subject to the direct use concept when engaged in the activities outlined in Section 123.4.3 [9] of these regulations. Purchases made by a contract miner or cutter for direct use in the production of natural resources are exempt, while purchases made for indirect use are taxable.

110 W.Va.R. *Taxation* § 15.123.4.3.5 (footnote added).

We acknowledge that under a strict interpretation of the requirements necessary to qualify as a contract miner or cutter, Taxpayer does not fit neatly into either of those two occupational descriptions. In describing those positions, the regulations provide: "A contract miner or cutter is a person engaged as an independent contractor in producing natural resources which are owned by others." 110 W.Va.R. *Taxation* § 15.123.4.3.5. Thus, the regulations require that the entity must be an independent contractor who is hired to engage in activities that qualify as mining-related under the "[p]roduction of natural resource" definition. W.Va.Code § 11–15–2(t). While Taxpayer easily qualifies as an independent contractor, the critical, but unresolved, question remains as to whether in performing his blasting services he is fulfilling the definitional purview of "[p]roduction of natural resources." *See id.*

■ Having come full circle now, we are back where we started with the initial ques-

---

**8.** The term "directly used or consumed" is defined as follows:

(n)(1) "Directly used or consumed" in the activities of contracting, manufacturing, transportation, transmission, communication or the production of natural resources shall mean used or consumed in those activities or operations which constitute an integral and essential part of such activities, as contrasted with and distinguished from those activities or operations which are simply incidental, convenient or remote to the activities.

(2) Uses of property or consumption of services which constitute direct use or consumption in the activities of contracting, manufacturing, transportation, transmission,

communication or the production of natural resources shall include only:

....

(B) Causing a direct physical, chemical or other change upon property undergoing manufacturing production or production of natural resources or which is the subject of contracting activity; ....

W.Va.Code § 11–15–2(n)(1), (2) (1987).

**9.** The activities included in Section 123.4.3 are the same list of mining activities or operations identified in West Virginia Code § 11–15–2(t): "the act or process of exploring, developing, severing, extracting, reducing to possession and loading for shipment...." 110 W.Va.R. *Taxation* § 15.123.4.3.

tion of whether to qualify as a producer of natural resources and be entitled to the exemption at issue, an entity must be engaged in the complete laundry list of mining operations provided by statute. *See id.* Given the admittedly circular nature in which these statutory definitions and regulations have been drafted, we find ourselves with a paucity of useful guidance to aid us in resolving this issue of statutory interpretation. And, while we are certainly cognizant of the practice of according deference to administrative law decisions, we find little other than conclusory statements in the administrative ruling below on the critical issues under consideration.[10] *See Lincoln Co. Bd. of Educ. v. Adkins,* 188 W.Va. 430, 434, 424 S.E.2d 775, 779 (1992) (requiring that deference be shown to administrative bodies charged with implementation of specific bodies of law unless clearly erroneous); *Boley v. Miller,* 187 W.Va. 242, 246, 418 S.E.2d 352, 356 (1992) (recognizing that administrative interpretations of statutes are given great weight unless unduly restrictive and in conflict with legislative intent).

█ Taxpayer argues that it is illogical to suggest that the Legislature would have intended certain "bit players" in the mining process, such as those who are hired to perform limited post-mining operations, like reclamation and waste removal, to benefit from the use tax exemption, while someone who performs a service that is integral to the mining process, such as itself, is denied the exemption. We find Taxpayer's argument on this issue to be compelling. Without the blasting services that it performs for those customers who do not regularly employ a licensed blaster, the coal that is embedded in the overburden could not be mined. Consequently, there can be no dispute that the blasting services at issue are "an integral and essential part" of the mining process itself and not merely "incidental, convenient or remote to such activities." W.Va.Code § 11–15–2(n)(1). Without a doubt then, the blasting services performed by Taxpayer are

"directly used" in the process or act of producing natural resources. *Id.* To limit the producer exemption to only those entities whose involvement in the production of natural resources includes each and every listed aspect of the mining process seems counterintuitive. Rather than focusing in such an exclusive manner on meeting a definition that arguably was never intended to operate in such a limiting fashion, we think the better test is to turn the exemption's application on the issue of meeting the "direct use" test, provided that the entity seeking the exemption can qualify as performing at least one of the delineated mining activities or operations. This result seems more in accord with the intent of the legislation at issue and should not serve to improperly extend the exemption to entities not contemplated by the Legislature as being subject to its benefit.[11] *See Carper v. Kanawha Banking & Trust Co.,* 157 W.Va. 477, 517, 207 S.E.2d 897, 921 (1974) (recognizing that " 'courts have power to change and will change "and" to "or" and vice versa, whenever such conversion is required by the context, or is necessary to harmonize the provisions of a statute and give effect to all of its provisions, or to save it from unconstitutionality, or, in general to effectuate the obvious intention of the Legislature' ") (quoting 50 Am.Jur. *Statutes* § 281 (1944)).

Accordingly, we hold that an individual or business entity who is not subject to the severance tax but seeks exemption from the use tax imposed by the West Virginia Department of Tax and Revenue pursuant to West Virginia Code § 11–15–9(g) (1987) [now W.Va.Code § 11–15–9(b)(2) (2002) ] based on its involvement in the production of natural resources must demonstrate that the sale or service for which exemption is sought is directly used or consumed within the production process and that such entity is engaged in one or more activities or operations that constitute the act or process of producing natural resources within the meaning of applicable statutory and regulatory provisions.

---

**10.** We note that the administrative law judge never made any findings on the issue of direct use or to support its position that Taxpayer was not a producer of natural resources.

**11.** If this Court has wrongly interpreted the statute and regulations under discussion, we are confident that the Legislature will quickly act to remedy any misinterpretation on our part.

*See* W.Va.Code § 11–15–9–2(t); 110 W.Va.R. *Taxation* § 15.123.4.3. As discussed above, the blasting services for which Taxpayer seeks exemption from use tax assessment clearly constitute a direct use under both the statutory definition and the regulations which expressly identify blasting and explosive materials as items that are directly used in the production of natural resources. *See* W.Va. Code § 11–15–2(n)(2)(B); 110 W.Va.R. *Taxation* § 15.123.4.3.7.b.4. In this Court's opinion, Taxpayer comes within the statutory definition of "[p]roduction of natural resources" in connection with its severance-related blasting activities. W.Va.Code § 11–15–2(t). But for the blasting operations performed by Taxpayer, the coal could not easily be removed from the overburden and placed into production. Consequently, we find that the lower court was in error in affirming the use tax assessment against the Taxpayer. Under the reasoning stated above, we conclude that on the facts of this case Taxpayer is entitled to an exemption from use tax under the provisions set forth in West Virginia Code § 11–15–9(g).[12]

Based on the foregoing, the decision of the Circuit Court of Monongalia County is hereby reversed.

Reversed.

Justices DAVIS and MAYNARD dissent and reserve the right to file dissenting opinions.

Justice STARCHER concurs and reserves the right to file a concurring opinion.

DAVIS, J., dissenting:

(Filed March 17, 2005)

Before this Court, the Tax Department argued that a retail seller of blasting materials, Mt. State Bit Service, Inc. (hereinafter referred to "Mountain State Bit"), was not a coal mining company. Therefore, Mountain State Bit was not exempt from a use tax. The majority opinion disagreed with the Tax Department. In doing so, the majority opinion has violated statutory rules of construc-

tion to reach a result that has ominous financial consequences for the revenue of this State. Consequently, and for the reasons set out below, I dissent.

This was a simple case. In fact, the circuit court agreed with the Tax Department that, as a retail seller of blasting materials, Mountain State Bit was not a coal mining company merely because it *occasionally* blasted mining walls for coal companies. This simple case has mushroomed into a potential financial nightmare for the State. In essence, the majority opinion has rewritten statutes. Although there were several statutory provisions that the majority opinion erroneously construed to reach its result, I will confine my dissent to the statutory provision that was dispositive.

Pursuant to W. Va.Code § 11–15–9(g), a business engaged in the production of natural resources is exempt from a use tax. In order to determine whether a retail seller of blasting materials, such as Mountain State Bit, was engaged in the production of coal, the majority opinion looked to the definition of "production of natural resources" as it was defined in 1987. The phrase "production of natural resources" was first defined in 1987 under W. Va.Code § 11–15–2(t) as follows:

> "Production of natural resources" means the performance, by either the owner of the natural resources or another, of the act or process of exploring, developing, severing, extracting, reducing to possession and loading for shipment for sale, profit or commercial use of any natural resource products and any reclamation, waste disposal or environmental activities associated therewith.

The above statute is clear and unambiguous. Under a fundamental rule of statutory construction, "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959). Pursuant to W. Va.

---

12. Given our determination that an exemption from the use tax was available to Taxpayer under W.Va.Code § 11–15–9(g), we do not proceed to consider the applicability of the contractor exemption set forth in W.Va.Code § 11–15–8a.

Code § 11–15–2(t), if Mountain State Bit, as a retail seller of blasting materials, wanted to qualify as a producer of coal, it had show that its coal activity included "exploring, developing, severing, extracting, reducing to possession and loading for shipment for sale, profit or commercial use[.]" The Tax Department and the circuit court accepted this as the plain and unambiguous meaning of "production of natural resources." W. Va.Code § 11–15–2(t) (emphasis· added). Thus, both the Tax Department and the circuit court found that the blasting activities of Mountain State Bit failed to meet that definition.

To frustrate the plain and unambiguous meaning of W. Va.Code § 11–15–2(t), the majority opinion, without acknowledging ˙the fact, found the statute to be ambiguous. The majority opinion did so by concluding that when the Legislature said "exploring, developing, severing, extracting, reducing to possession **and** loading for shipment for șale, profit or commercial use," it meant something different than what it had plainly stated. Consequently, the majority opinion rewrote the statute to say "exploring, developing, severing, extracting, reducing to possession **or** loading for shipment for sale, profit or commercial use." The majority opinion believed that when the Legislature said "and" it was erroneous, and that the Legislature should have said, or meant to say, "or." Armed with its new judicial definition of "production of natural resources", the majority opinion made a retail seller of blasting materials a coal producer. The majority so concluded because Mountain State Bit severed rocks from coal for mining companies. With this analysis, I cannot agree.

The prior decisions of this Court have long warned that "[i]t is not the province· of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten[.]" *General Daniel Morgan,* 144 W.Va. at 145, 107 S.E.2d at 358 (citation omitted). Further, it is the "duty of this Court to avoid whenever possible a construction of a statute which leads to absurd, ... unjust or unreasonable results." *State v. Kerns,* 183 W.Va. 130, 135, 394 S.E.2d 532, 537 (1990). The majority opinion

tossed aside these time-honored principles because the majority did not believe the Legislature meant "and" when it plainly and clearly said "and." Had the majority only taken the time to educate itself on the history of W. Va.Code § 11–15–2(t), my brethren would have understood that when the Legislature said "and," it meant "and," not "or." I am certain of Legislative intent because the Legislature has amended W. Va.Code § 11–15–2(t) on at least *three separate occasions* since its passage in 1987. The first amendment to the statute occurred in 1993 and read:

"Production of natural resources" means the performance, by either the owner of the natural resources or another, of the act or process of exploring, developing, severing, extracting, reducing to possession, *processing* **and** loading for shipment *and shipment* for sale, profit or commercial use of any natural resource products and any reclamation, waste disposal or environmental activities associated therewith.

Acts of 1993, c. 156 (emphasis added). The underlined text of the statute indicates the additions made by the Legislature to the statute in 1993. But more importantly, the highlighted word "and" remained in the statute as it existed in 1987.

In 1994, the Legislature again re-visited W. Va.Code § 11–15–2(t). This time the Legislature redesignated the statute as W. Va.Code § 11–15–2(*o*). The statute was also expanded upon as follows:

"Production of natural resources" means, *except for oil and gas,* the performance, by either the owner of the natural resources or another, of the act or process of exploring, developing, severing, extracting, reducing to possession *[omitted processing]* and loading for shipment and shipment for sale, profit or commercial use of any natural resource products and any reclamation, waste disposal or environmental activities associated therewith. *For the natural resources oil and gas, "production of natural resources" means the performance, by either the owner of the natural resources, a contractor or a subcontractor, of the act or process of exploring, developing, drilling,*

*well-stimulation activities such as logging, perforating or fracturing, well-completion activities such as the installation of the casing, tubing and other machinery and equipment and any reclamation, waste disposal or environmental activities associated therewith, including the installation of the gathering system or other pipeline to transport the oil and gas produced or environmental activities associated therewith and any service work performed on the well or well site after production of the well has initially commenced. All work performed to install or maintain facilities up to the point of sale for severance tax purposes would be included in the "production of natural resources" and subject to the direct use concept. "Production of natural resources" does not include the performance or furnishing of work, or materials or work, in fulfillment of a contract for the construction, alteration, repair, decoration or improvement of a new or existing building or structure, or any part thereof, or for the alteration, improvement or development of real property, by persons other than those otherwise directly engaged in the activities specifically set forth in this subsection as "production of natural resources".*

Acts of 1994, c. 171 (emphasis added). The underlined text of the statute indicates the 1994 additions made by the Legislature to the statute. The italicized words show what the Legislature deleted from the statute in 1994. The highlighted word "and" remained in the statute as it existed in 1987. Again, the Legislature had an opportunity to fully examine the statute and made the changes it deemed appropriate to carry out its intent.

In 1998, the Legislature once again revisited W. Va.Code § 11–15–2(t), which had been redesignated as W. Va.Code § 11–15–2(o). As a result of the 1998 amendments, the statute read:

"Production of natural resources" means, except for oil and gas, the performance, by either the owner of the natural resources or another, of the act or process of exploring, developing, severing, extracting, reducing to possession and loading for shipment and shipment for sale, profit or commercial use of any natural resource products and any reclamation, waste disposal or environmental activities associated therewith *and the construction, installation or fabrication of ventilation structures, mine shafts, slopes, boreholes, dewatering structures, including associated facilities and apparatus, by the producer or others, including contractors and subcontractors, at a coal mine or coal production facility.* For the natural resources oil and gas, "production of natural resources" means the performance, by either the owner of the natural resources, a contractor or a subcontractor, of the act or process of exploring, developing, drilling, well-stimulation activities such as logging, perforating or fracturing, well-completion activities such as the installation of the casing, tubing and other machinery and equipment and any reclamation, waste disposal or environmental activities associated therewith, including the installation of the gathering system or other pipeline to transport the oil and gas produced or environmental activities associated therewith and any service work performed on the well or well site after production of the well has initially commenced. All work performed to install or maintain facilities up to the point of sale for severance tax purposes would be included in the "production of natural resources" and subject to the direct use concept. "Production of natural resources" does not include the performance or furnishing of work, or materials or work, in fulfillment of a contract for the construction, alteration, repair, decoration or improvement of a new or existing building or structure, or any part thereof, or for the alteration, improvement or development of real property, by persons other than those otherwise directly engaged in the activities specifically set forth in this subsection as "production of natural resources".

Acts of 1998, c. 303 (emphasis added). The underlined text of the statute indicates the additions made by the Legislature to the statute in 1998. Again, the highlighted word "and" remained in the statute as it existed in 1987.

I have labored to demonstrate that, starting in 1987, the Legislature defined "production of natural resources" on four separate occasions. Each time the Legislature deliberated over the definition of "production of natural resources," it always included the passage "exploring, developing, severing, extracting, reducing to possession and loading for shipment for sale, profit or commercial use." Even though the Legislature has had more than fourteen years of experience with the statute at issue in this case, the majority of this Court has determined that the Legislature unknowingly kept the word "and" in the statute. As such, I believe this result to be violative of basic statutory construction. *See Boyd v. Merritt,* 177 W.Va. 472, 474, 354 S.E.2d 106, 108 (1986) ("This Court does not sit as a superlegislature, commissioned to pass upon the ... merits of statutes pertaining to proper subjects of legislation. It is the duty of the legislature to consider facts, establish policy, and embody that policy in legislation. It is the duty of this court to enforce legislation unless it runs afoul of the State or Federal Constitutions."). I feel compelled to remind the majority that:

Though the Legislature, in enacting the [statute] may not have realized or foreseen the result of its action ..., it is presumed to be familiar with "all existing law", constitutional, statutory or common, applicable to the subject matter, and it has, by clear, explicit, and unambiguous language, which must be given its usual and ordinary significance and meaning, expressed its intention to accomplish that result. Its power to do so must be recognized, and its enactment given full force and effect, by the courts. *If its exercise of that power cause an undesirable result, the remedy lies with the Legislature, whose action has produced it, and not with the courts. The question of dealing with the situation in a more satisfactory or desirable manner is a matter of policy which calls for legislative, not judicial, action.*

*Hereford v. Meek,* 132 W.Va. 373, 388, 52 S.E.2d 740, 748 (1949) (citation omitted) (emphasis added).

As a final matter, I wish to note that the majority opinion will undoubtedly have far-reaching financial consequences. Although the facts of this case were limited to allowing a retail seller of blasting materials to be transformed into a coal mining company, the majority ruling extends beyond this one case. In effect, *any* business supplying direct services to coal mining companies that involve exploring, developing, severing, extracting, reducing to possession or loading for shipment of coal will be able to take advantage of the majority's decision to rewrite an unambiguous statute in order to escape tax liability and deprive this State of precious tax revenue.[1]

Consequently, I respectfully dissent.

I am authorized to state that Justice MAYNARD joins in this dissenting opinion.

STARCHER, J., concurring.

(Filed July 14, 2005)

I concur in the majority's holding and reasoning. I write separately to respond to several misguided contentions asserted in the dissenting opinion filed by two of my colleagues.

Initially, I note that the dissenting opinion mistakenly claims that the majority opinion extended an across-the-board use tax exemption to the taxpayer for *all* of the taxpayer's business activities. The dissenting opinion wrongly states that the majority's ruling transformed a seller of blasting materials into a coal miner.

This distortion of the majority opinion by my dissenting colleagues is just wrong. The majority gives cognizance to the Legislature's intent of promoting the coal industry via the use of its tax policy.

Nowhere in the majority opinion was there a wholesale alteration of the character of the taxpayer's business as the dissent suggests. A careful reading of the opinion reveals that the exemption from use taxes approved by the majority applies *only to the taxpayer's*

---

1. Some examples of companies associated with the coal industry that will most certainly benefit from the majority's use tax exemption include mine ventilation companies, industrial rubber companies and mining car manufacturers.

*performance of blasting services when involved in direct connection with the activity of coal mining.* Critically, the majority opinion centered upon the nature of the transactions at issue: the sale *and* utilization by the taxpayer of blasting materials to sever embedded coal. Only those specific blasting activities by the taxpayer directly related to the production of coal were found to be entitled to the use tax exemption.[1]

Furthermore, the dissent makes the exaggerated claim that the taxpayer—and, for that matter, any business that conducts any activity involving exploring, developing, severing, extracting, reducing to possession or loading for shipment of coal—will in the future completely "escape tax liability." The dissenting opinion appears to have overlooked a critical fact that the taxpayer in this case conceded the applicability of the consumer sales/service tax to its direct retail sales of blasting materials that were not accompanied by the taxpayer's expertise in using those materials, and to its other business activities.

The use tax exemption at issue in this case was extended to the subject taxpayer upon the majority's well-reasoned conclusion that, based on existing statutory and regulatory definitions, the taxpayer's provision of blasting materials and blasting services qualify as items directly used in connection with the production of natural resources. All other activities of the taxpayer, which do not directly involve the production of natural resources, are taxable.

My colleagues also incorrectly argue in their dissenting opinion that principles of statutory construction were violated to reach this conclusion. Nothing could be farther from the truth. Well-ensconced principles of statutory construction authorize courts interpreting legislative enactments to "change 'and' to 'or' and vice versa" where such conversion is necessary to harmonize the statutory provisions or to ensure that the intention of the Legislature is correctly effectuated. *Carper v. Kanawha Banking & Trust Co.,* 157 W.Va. 477, 517, 207 S.E.2d 897, 921 (1974) (quoting 50 Am.Jur. *Statutes* § 281 (1944)).[2] In accord *Cogan v. City of Wheeling,* 166 W.Va. 393, 396, 274 S.E.2d 516, 519 (1981); *State v. Wester,* 269 Neb. 295, 300, 691 N.W.2d 536, 540 (2005) ("The laxity in the use of the conjunctive 'and' and the disjunctive 'or' is so frequent that the doctrine has been accepted that they are interchangeable and that one may be substituted for the other if to do so is necessary to give effect to any part of a statute or to effectuate the intention of the Legislature."); *Sharp v. State,* 817 N.E.2d 644, 647 (Ind. App.2004) ("The words 'and' and 'or' as used in statutes are not interchangeable, being strictly of a conjunctive and disjunctive nature respectively, and their ordinary meaning should be followed if it does not render the sense of the statute dubious."); *Cruz v. Trotta,* 363 N.J.Super. 353, 358, 833 A.2d 72, 75 (2003) ("The words 'or' and 'and' are [often] used interchangeably, and the determination of whether the word 'and' as used in a statute should be read in the conjunctive or disjunctive depends primarily upon the legislative intent."); *Ex Parte Uniroyal Tire Co.,* 779 So.2d 227, 234 (Ala.2000) (observing that " 'this Court is at liberty in ascertaining the intent of the legislature to construe the disjunctive conjunction "or" and the conjunctive conjunction "and" interchangeably' "); *South East Pub. Serv. Corp. v. Commonwealth,* 165 Va. 116, 120, 181 S.E. 448, 449 (1935) (recognizing that " '[w]henever it is necessary to effectuate the obvious intention of the Legislature, the courts have the power to change and will change "and" to "or," and vice versa' "); *see generally* 73 Am.Jur.2d *Statutes* § 156

---

**1.** At issue in this case were the sales of blasting materials to customers who then required the taxpayer to use those blasting materials to sever coal from its bed because the customer involved did not employ a licensed blaster. The taxpayer, in this instance, was directly involved in mining coal.

**2.** In Syllabus Point 20 of *Carper v. Kanawha Banking & Trust Co.,* the Court plainly held:

Because of the frequent inaccurate usage of the disjunctive "or" and the conjunctive "and" in statutory enactments, courts have the power to change and will change "and" to "or" and vice versa, whenever such conversion is necessary to effectuate the intention of the Legislature and give effect to the overall provisions of a statute.

(2001); 17 Michie's Jurisprudence *Statutes* § 60 (1994).

The majority properly determined that the definition of a "producer of natural resources" could not have been intended to be limited to only those business entities who performed the entirety of the list of mining activities supplied in conjunctive fashion in *W.Va.Code,* 11–15–2(t). The majority did not reach this decision in a vacuum, but only after looking to the additional statutory and regulatory provisions concerning "direct use." *W.Va.Code,* 11–15–9(g); 11–15–2(n)(2)(B); 110 W.Va.R. *Taxation* §§ 15.123.4.3.7; 15.123.4.3.7.b.4. Given that the Legislature expressly identified "blasting equipment and explosives" as qualifying activities under the "direct use" test, the majority determined that the activity under discussion (blasting) was clearly identified by the Legislature as subject to use tax exemption.

Unlike my dissenting colleagues, I am not willing to so quickly assume that the Legislature has enacted an absurd statute, one that creates a tax exemption from which no taxpayer could ever benefit. Furthermore, I recognize that the Legislature has had several opportunities to change the statute, but I also recognize that it is difficult to enact a statute, and even more difficult for the Legislature to alter, amend, or repeal that statute. In sum, the Legislature's intent in enacting this statute is clear; the verbiage it chose to carry out that intent may have been sloppy, and sheer legislative inertia makes it well-nigh impossible to correct that language.

Consequently, the majority fairly reasoned that a statutory interpretation which limited the definition of "producer of natural resources" solely to those business entities who perform the entire litany of identified mining activities without exception—the interpretation suggested in the dissenting opinion—would fly in the face of clearly expressed legislative intent, as well as common sense. The correctness of this determination was further suggested by the Legislature's determination that entities performing only one particularized aspect of mining-related activities such as reclamation or waste removal are entitled to the exemption as natural resource producers. All of these factors combined strongly compelled the decision reached by the majority—a decision that comports with the overall spirit of the regulations promulgated by the Tax Department with regard to identifying exempt and non-exempt coal mining related activities.

Though the dissenting justices suggest that the majority's ruling will have disastrous financial consequences upon the State, that contention is clearly not supported by the record. Nothing was presented to this Court, in the briefs, the record or the oral arguments, to suggest that the Court's adoption of the taxpayer's argument would lead to financial ruin for the State. Neither the Tax Department nor the taxpayer presented any evidence regarding the financial impact of this case on tax collections from the State's coal industry. The dissenting opinion is therefore engaging in sheer speculation by asserting otherwise.

Accordingly, I respectfully concur.