967 A.2d 341 (2009)
406 N.J. Super. 198
In re Petition for AUTHORIZATION TO CONDUCT a REFERENDUM ON the WITHDRAWAL OF the BOROUGH OF ORADELL FROM the RIVER DELL REGIONAL SCHOOL DISTRICT.
DOCKET NO. A-1318-07T1.
Superior Court of New Jersey, Appellate Division.
Argued January 27, 2009.
Decided April 1, 2009.
*342 Vito A. Gagliardi, Jr., Morristown, argued the cause for appellant, Borough of Oradell (Porzio, Bromberg & Newman, attorneys; Mr. Gagliardi, of counsel and on the brief; Kerri A. Wright, on the brief).
Stephen R. Fogarty, Fairlawn, argued the cause for respondent, River Edge Board of Education (Fogarty & Hara, attorneys; Mr. Fogarty, of counsel and on the brief; Thomas Scapoli, on the brief).
Rodney T. Hara, Fairlawn, argued the cause for respondent, River Dell Regional School District Board of Education (Fogarty & Hara, attorneys; Mr. Hara, of counsel and on the brief; Brent R. Pohlman, on the brief).
William R. Lindsley, attorney for respondent, Borough of River Edge, joins in the brief filed by respondent, River Edge Board of Education.
Sookie Bae, Deputy Attorney General, argued the cause for respondent, Board of Review (Anne Milgram, Attorney General, attorney; Melissa H. Raksa, Deputy Attorney General, of counsel; Ms. Bae, on the brief).
Before Judges WINKELSTEIN, FUENTES and CHAMBERS.
The opinion of the court was delivered by
WINKELSTEIN, P.J.A.D.
On May 10, 2007, the Borough of Oradell filed a petition for authorization to conduct a referendum to withdraw from the River Dell Regional School District (the District) in Bergen County. The District consists of two municipalities, Oradell and the Borough of River Edge. Petitioner's withdrawal would dissolve the District.
Petitioner premised its withdrawal on the creation of mutual "send-receive" agreements. River Edge, the River Edge Board of Education and the District each objected to petitioner's request. A Board of Review (the Board) voted to deny the petition on October 16, 2007. In January 2008, the Board amplified its decision. The Board's determination was primarily informed by its finding that dissolution of the District would produce an excessive debt burden for the constituent school districts. Petitioner appeals, and we affirm substantially for the reasons expressed by the Board. In doing so, we conclude that a school district's excessive debt burden may be determined by factors in addition to a district's borrowing margin.
The District was formed in 1956. Each municipality has a board of education that provides for the education of children in kindergarten through sixth grade (K-6). River Dell Middle School (the middle school), located in River Edge, educates children in the District in grades seven and eight; and River Dell High School (the high school), located in Oradell, educates students in the District in grades nine through twelve. In 2003, voters in the two municipalities passed a referendum to renovate the high school at a cost *343 of $22 million, to be repaid over twenty years. In 2005, River Edge approved an $18.8 million renovation to its two elementary schools.
Petitioner has fewer students in the District than does River Edge. Nevertheless, because costs for the District are apportioned between the municipalities according to the equalized value of real estate in each municipality, and because petitioner has a higher equalized value of real estate than River Edge, petitioner pays a higher percentage of the District's expenses. Apportioning tax levies on a per-pupil basis, for the 2007-2008 school year River Edge paid roughly $12,200 per student while petitioner paid $17,800 per student.
At petitioner's behest, in December 2006, Statistical Forecasting, LLC (Statistical) and James L. Kirtland, CPA, prepared a feasibility study (the feasibility study) to determine the educational and financial ramifications of petitioner's withdrawal from the District. The feasibility study concluded that dissolution was feasible and that petitioner was paying a disproportionate share of the District's costs. For example, the feasibility study found that for fiscal year 2005, the equalized value of real estate for petitioner was $1.7 billion and for River Edge it was $1.6 billion. As such, petitioner was paying 52% of the costs of the District while River Edge was paying only 48%.
The feasibility study called for elimination of the District with the two municipalities' boards of education assuming responsibility for education of all students. This could only be accomplished if the municipalities entered into mutual "send-receive" agreements. Under such agreements, the seventh and eighth graders from Oradell would be sent to the middle school in River Edge, and the high school students from River Edge would be educated in Oradell, thus providing a K-12 education for the children of both municipalities. According to this plan, the children and teachers in both municipalities would remain in the same schools. River Edge would become a K-8 district, while petitioner would become a K-6/9-12 district. The feasibility study concluded that the dissolution of the District would result in a savings to petitioner of more than $2 million per year.
In April 2007, Dr. Aaron Graham, the Bergen County Superintendent of Schools (the Superintendent), issued a report listing four advantages and eight disadvantages of petitioner's withdrawing from the District. The Superintendent pointed out that N.J.S.A. 18A:13-23.3 provides a statutory mechanism for changing the apportionment of costs, which could provide a solution to petitioner's problem. He also expressed that the equalized value of real estate in the two municipalities was nearly equivalent and that petitioner's cost per pupil was higher because the District had fewer students residing in Oradell than in River Edge. He concluded that withdrawal would be disruptive to students and costly to taxpayers.
In response to a Board request for additional information regarding the debt burden that would result from dissolution, as well as the ability of the two school districts to maintain efficient school systems, River Edge submitted two additional reports. The first report, prepared by Vincent D. Yaniro of VDY Consulting, LLC, discussed the financial aspects of petitioner's withdrawal from the District. Although Yaniro's figures were virtually the same as those contained in petitioner's feasibility study, his conclusions were different. He found that dissolution would present an excessive debt burden to River Edge because petitioner would inherit a completely renovated high school, whereas River Edge would inherit a middle school that had not been renovated since 1968 *344 and required major repairs. Yaniro opined that River Edge would not have the borrowing capacity to fund the estimated $24 million in repairs to the middle school. He based his conclusions on a long range facility plan (LRFP), created in 2005, which detailed the repairs necessary in the middle school.
The second report, prepared by Dr. Karen Lake, a school superintendent and former school principal, discussed the educational impact of dissolution of the District. Dr. Lake concluded that the dissolution would create staffing shortages and would require formation of a new high school administration because petitioner had never administered a high school. Moreover, because River Edge had refused to enter into a "send-receive" relationship with petitioner, Dr. Lake expected that neither municipality would be capable of guaranteeing a K-12 education, as is required by statute.
Kirtland and his consultants submitted supplemental studies responding to the concerns raised by Lake and Yaniro (the supplemental report). Petitioner maintained that upon dissolution, the District's $21.8 million debt due to the renovation of the high school would be split, with petitioner assuming responsibility for 55.8% and River Edge being liable for 44.2%. Therefore, the supplemental report concluded that the borrowing margin, i.e. the ability of each municipality to incur additional debt, would be $16 million for River Edge and $39 million for petitioner; consequently, the dissolution would not cause excessive debt for either municipality. Kirtland also stated that the need for renovations to the middle school was speculative because it was based on information from 2005. He also disagreed with Lake's conclusions that there would be a teacher shortage, and that petitioner's board of education would not be capable of administering a high school.
After reviewing all of the evidence, the Board determined that withdrawal would impose an excessive debt burden on River Edge because its $16 million borrowing margin would be inadequate to fund the $24 million in repairs to the middle school. The Board also concluded that withdrawal would prevent maintenance of an efficient educational system in both school districts because neither district would be capable of providing a K-12 education to its students. The Board noted the District's prior success in providing an excellent education to its students, and that the Legislature has called for the elimination of all districts that are not K-12 by 2010. The Board made the following findings:
[D]issolution of River Dell would produce an excessive debt burden for the constituent districts. The 2005 Long Range Facilities Plan ("LRFP")[3] for River Dell anticipates over $24 million in renovations to the middle school in the next few years, which would cause River Edge to exceed its debt limit. Oradell contends that it is likely the repairs would be made prior to the completion of the dissolution process, and that in any event, the need for repairs is speculative at this point. However, it cannot be disputed that the resulting debt limitations would severely constrain River Edge's ability to make the necessary repairs to the middle school.
The ... impact of this excessive debt would be compounded by the tax implications of the proposed dissolution.
The Board found a potential shift in tax burden to River Edge if Oradell was permitted to withdraw from the District; River Edge residents would incur a substantial *345 tax rate increase. In discussing whether dissolution would impact the efficiency of the school districts, the Board
noted that the configuration proposed by Oradell, whereby the Oradell district would be comprised of K-6 and 8-12, and River Edge would be limited to a K-8 is not in existence anywhere else in the State of New Jersey, would clearly have been designed for no other purpose than addressing Oradell's concerns with the apportionment of River Dell's costs. Moreover, the sending-receiving agreement upon which the entire proposal rests, and which Oradell itself acknowledges as being critical, is one that River Edge does not consent to. The ... fact that Oradell itself concedes that the dissolution could not be effectuated without such an agreement, supports its view that an efficient school system could not be maintained in either district upon dissolution. In favor of its position, Oradell asserted that River Edge would not have any alternative choice but to acquiesce to a send-receive agreement in the event of a dissolution. The Board was not persuaded by this reasoning.
Additionally, ... dissolution of River Dell in favor of two districts that would remain dependent upon each other would be in opposition to the aims of recent legislation, N.J.S.A. 18A:7-8(h), which was enacted to promote the elimination of these types of districts in favor of regional districts over the course of the next three years.
....
The other considerations which militate against the petition were discussed in connection with whether an excessive debt burden or inefficient system of education would result, and are reiterated here. As stated, the proposed dissolution is inconsistent with the current trend throughout the state towards consolidation as evidenced by A-4.
To permit dissolution of River Dell in light of the eventual recommendation by the Executive County Superintendent to eliminate the resulting configurations within the next three years would be disruptive and inefficient in the long-term. Oradell's suggestion that the regional district be dissolved for the sole purpose of realizing a financial benefit is inconsistent with the trend toward consolidation, and ultimately does not further the primary objective of ensuring a Thorough and Efficient Education. The parties are in complete agreement that the River Dell has enjoyed great history of success in educating their students. Oradell's current proposal seeks to dismantle that district for no other purpose but to reduce its costs. However, Oradell may seek a referendum on modification of the apportionment of costs through the mechanism provided by statute at N.J.S.A. 18A:13-23.3, without seeking the dissolution of the Regional School District.
Ordinarily, an appellate court will reverse the decision of an administrative agency only if it is arbitrary, capricious or unreasonable, or it is not supported by substantial credible evidence in the record as a whole. Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980). Considerable weight is given to agency expertise where such expertise is relevant. Nanavati v. Burdette Tomlin Mem'l Hosp., 107 N.J. 240, 251, 526 A.2d 697 (1987). An appellate court, however, is not bound by an "agency's interpretation of a statute or its determination of a strictly legal issue." In re Taylor, 158 N.J. 644, 658, 731 A.2d 35 (1999) (internal quotation omitted). And our review calls for "careful and principled consideration of the agency record and findings." Id. at *346 657-58, 731 A.2d 35 (internal quotation omitted).
The New Jersey Constitution requires that the State provide "a thorough and efficient system of free public schools for the instruction of all the children in the State between the ages of five and eighteen years." N.J. Const. art. VIII, § 4, ¶ 1. Prior to 1975, the expenses of all school districts were apportioned on a per-pupil basis. Petition for Authorization to Conduct A Referendum on Withdrawal of N. Haledon Sch. Dist. v. Passaic County Manchester Reg'l High Sch. Dist., 181 N.J. 161, 165, 854 A.2d 327 (2004). In 1975, an amendment to N.J.S.A. 18A:13-23 required districts to apportion costs based on the equalized value of real estate, which shifted costs to municipalities that had higher property values. Ibid. In 1993, the statute was amended again to provide that districts could choose either the equalized value method, the per-pupil method, or some combination of the two. Id. at 166, 854 A.2d 327; N.J.S.A. 18A:13-23. N.J.S.A. 18A:13-23.3 provides a procedure for a district to modify its cost apportionment.
When the board of education of a local school district, constituting part of a regional school district, or that municipality's governing body, wishes to withdraw from the regional school district, it may apply to the county superintendent of schools to investigate whether withdrawal is advisable. N.J.S.A. 18A:13-51. The superintendent is required to file a report that provides information regarding the financial and educational effects of such withdrawal. N.J.S.A. 18A:13-52. Even if the superintendent recommends against withdrawal, the withdrawing district may petition the Commissioner of Education for permission to submit the issue to the voters by way of a referendum. N.J.S.A. 18A:13-54. The Commissioner then submits the petition for withdrawal to the Board for a decision as to whether to authorize a referendum. N.J.S.A. 18A:13-56.
The Board must consider the educational and financial impact of the withdrawal, both on the withdrawing and remaining school district. N.J.S.A. 18A:13-56. The petition may only be denied upon a finding by the Board that
1. An excessive debt burden will be imposed upon the remaining districts, or the withdrawing district ...;
2. An efficient school system cannot be maintained in the remaining districts or the withdrawing district ... without excessive costs;
3. Insufficient pupils will be left in the remaining districts ... to maintain a properly graded school system; or
4. Any other reason, which it may deem to be sufficient....
[N.J.S.A. 18A:13-56b.]
The last factor, the catchall phrase in N.J.S.A. 18A:13-56b4, is limited to a reason of the same character as the other three factors, namely, a constitutional impediment to providing a thorough and efficient free public education for students in grades K-12. In re Authorization to Conduct a Referendum on the Dissolution of Union County Reg'l High Sch. Dist. No. 1, 298 N.J.Super. 1, 8, 688 A.2d 1082 (App. Div.), certif. denied, 149 N.J. 37, 692 A.2d 50 (1997). Thus, the Board may only deny the petition if any of the first three factors are present, or for a reason that would conflict with the State's obligation to provide a thorough and efficient system of education. Ibid.
Although N.J.S.A. 18A:13-56b1 mandates that a petition be denied if an excessive debt burden will result, the statute does not define what constitutes an excessive debt burden. N.J.S.A. 18A:24-1 defines certain terms that pertain to a school *347 district's financial status. Included among those terms is "borrowing margin," which establishes a formula for the amount of money a school district may borrow for capital expenditures, and is related to the equalized value of real estate of the municipality. N.J.S.A. 18A:24-1. The borrowing margin is set by statute; a K-6 school district has a borrowing margin of 2.5% of the total average valuation of the taxable property in the district; while a K-8 district has a borrowing margin of 3%. N.J.S.A. 18A:24-19. Notably, the statute does not provide a borrowing margin for a K-6/9-12 district, such as petitioner is proposing, because no such district exists in New Jersey.
Here, the Board determined that factors one and two of N.J.S.A. 18A:13-56b were presentpetitioner's withdrawal would result in an excessive debt burden for River Edge and would interfere with maintenance of an efficient system of education in that district without excessive costs. The Board found that River Edge's $16 million borrowing margin would be insufficient to borrow the estimated $24 million needed to repair the middle school; the Board further noted that River Edge did not consent to the "send-receive" arrangement.
Petitioner takes issue with the Board's determination on a number of grounds. First, petitioner claims that the Board misinterpreted the statute when it considered future repairs to the middle school in determining whether an excessive debt burden would result from the withdrawal. Petitioner argues that the "borrowing margin" of a district is the only factor that determines whether an excessive debt burden will result, and here, after dissolution, each district would have a considerable borrowing margin. Petitioner bases this argument on N.J.S.A. 18A:24-19, which only permits districts to accrue debt up to the district's borrowing margin; consequently, petitioner concludes that excessive debt is an amount in excess of the borrowing margin. Petitioner claims that upon dissolution, River Edge would have a borrowing margin of $16 million and petitioner would have a margin of $39 million, which cannot be considered excessive debt burden under petitioner's construction of that term.
In analyzing this argument, "[w]e ascribe to the statutory words their ordinary meaning and significance, and read them in context with the related provisions so as to give sense to the legislation as a whole." DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). We give effect to all of the words of a statute, and must not render any of them "inoperative, superfluous or meaningless." Cruz v. Trotta, 363 N.J.Super. 353, 358, 833 A.2d 72 (App.Div. 2003) (internal quotation omitted).
Applying these cannons of interpretation, we disagree with petitioner's construction of the term excessive debt burden. The Legislature used the term "excessive debt burden," not "borrowing margin." N.J.S.A. 18A:13-56b1. The Legislature, presumably aware of the already existing borrowing margin formula, chose not to graft that formula onto the statutory procedure for withdrawal from a regional district. If the Legislature intended for the Board to be constrained by the district's "borrowing margin," it could have used that term. See Am. Fire & Cas. Co. v. N.J. Div. of Taxation, 189 N.J. 65, 82, 912 A.2d 126 (2006) (internal quotation omitted) ("[t]he legislature is presumed to be familiar with its own enactments").
Being undefined, we consider the term "excessive debt burden" to be more expansive than the term "borrowing margin," which is constrained by its statutory definition. Our decision is informed by the statutory scheme, which affords to the *348 Board broad discretion in its consideration of withdrawal applications. The Board of Review consists of high level State officials having expertise in the area of public education. N.J.S.A. 18A:13-56. A Board may require an initial investigation on a county level, the submission of feasibility studies, and analysis of financial information and indebtedness. Ibid.
The Board is charged with considering the effect of a proposal to withdraw "upon the educational and financial condition of the withdrawing and remaining districts." Ibid. The words used in the statute are in the main undefined, leaving room for the Board to exercise its judgment based on both factual and policy considerations. See, ibid. (using the undefined terms "efficient school system," "excessive costs," "insufficient pupils," and "properly graded," as well as "excessive debt burden"). Given this context, our view is that the Legislature intended to provide the Board with flexibility in defining "excessive debt burden," considering the facts, and applying the Board's expertise on a case-by-case basis. Thus, to determine what constitutes an excessive debt burden, a Board may consider other factors that impact the financial status of the withdrawing and remaining districts, as the Board did here.
One of those factors is the estimated $24 million needed to complete repairs to the middle school. The Board concluded that "the resulting debt limitations would severely constrain River Edge's ability to make the necessary repairs to the middle school." With a borrowing margin of $16 million, River Edge would not be able to complete the estimated repairs, should it be required to do so. The Board correctly considered this as a factor weighing against petitioner's withdrawal from the District. Petitioner's argument, that the Board is precluded from considering an anticipated $24 million expense in its determination of whether an excessive debt burden will result from dissolution, essentially requires the Board to ignore the anticipated cost of repair of the middle school. To do so would be inconsistent with the Board's statutory obligation implicit in N.J.S.A. 18A:13-56.
Petitioner also challenges the $24 million estimate, claiming that the LRFP was speculative; it was based upon information from 2005; there was no proof that the repairs were actually necessary; and inasmuch as the repairs were meant to be completed by 2010, most of them would be completed by the time the referendum is conducted. We reject these arguments. Although the evidence before the Board did not show whether any of these repairs had in fact been completed or were immediately necessary, it is undisputed that the middle school has not been renovated since 1968. It is a reasonable inference that these repairs will be necessary in the near future. Petitioner presented no evidence to support its argument that the 2005 LRFP estimating that $24 million in repairs would be needed for the middle school was inaccurate or that the costs estimated in that plan were stale.
Petitioner also claims that it presented unrefuted evidence that by the time dissolution would take place, the districts would have paid down a significant amount of the existing debt from renovation of the high school, and property values in the communities would have increased, thereby increasing the districts' borrowing margins. Again, we disagree.
The Board's decision was based upon reports submitted by the parties, which described the then current property values and the then existing debt. The reports submitted by both petitioner and respondent contained substantially similar numerical values for borrowing margins for *349 River Edge. Petitioner does not provide authority for its assertion that the Board was required to consider future repayment of debt or possible future increase in property values. The Board is not charged with predicting the future. Moreover, in the current economic climate, it is unclear that property values will, in fact, increase.
Petitioner also takes issue with the Board's finding that River Edge did not consent to the "send-receive" relationship with petitioner, consequently making it impossible for the two districts to guarantee a K-12 education for their students. Yet, petitioner has not substantially refuted that finding. Petitioner understood that "send-receive" agreements were a necessary condition for withdrawal and premised its petition on the adoption of this arrangement.
Petitioner claims that N.J.A.C. 6A:32-11.4, which authorizes the Board to set conditions for withdrawal, empowers the Board to compel River Edge to consent to a send-receive arrangement with petitioner. We agree that N.J.A.C. 6A:32-11.4 permits the Board to set conditions for withdrawal. But, that is only true when the Board is satisfied that the requirements of N.J.S.A. 18A:13-56 have been met. Where, as here, the Board has determined that N.J.S.A. 18A:13-56 precludes withdrawal because an excessive debt burden will result, the Board is not authorized, and is certainly not required, to set a condition for withdrawal such as the one petitioner suggests.
Next, petitioner claims that the Board relied on factors that are not permitted by statute, such as the quality of education currently provided by the District and that the Legislature seeks to eliminate all districts that are not K-12 by 2010. See N.J.S.A. 18A:7-8(h). We reject those arguments.
Though the Board noted the excellent education provided by the District, and that it would be inefficient to create districts that would have to be dismantled by the year 2010, the Board did not deny the petition based upon these factors. It grounded its decision on the excessive debt burden the dissolution would foster upon River Edge; that River Edge has not consented to a sending-receiving relationship with Oradell; and that the configuration proposed by Oradell, whereby the Oradell district would be comprised of K-6 and 9-12, and River Edge would be limited to K-8, is designed "for no other purpose than addressing Oradell's concerns with the apportionment of River Dell's costs."
Finally, petitioner takes issue with the Board's conclusion that N.J.S.A. 18A:7F-38, which prohibits expansion of school budgets by more than 4% per year, was applicable to this situation and would require each of the municipalities to make drastic cuts in education for budgetary reasons. See L. 2007, c. 62; N.J.S.A. 18A:7F-38. In April 2007, the Legislature passed this act, which limits the amount a school district can increase its tax levy in any given year. Ibid. Although the statute's applicability to new school districts created by deregionalization is unclear, we need not reach that issue in that we have concluded that for the other reasons, the Board was correct in denying Oradell's petition. The Board's consideration of N.J.S.A. 18A:7F-38 in the context of the remaining factors is not ground for disturbing the Board's decision.
In sum, we conclude that the Board complied with the statutory requirements, and considered appropriate factors. Its decision was supported by substantial evidence in the record, and was not arbitrary, capricious or unreasonable. We affirm *350 substantially for the reasons expressed by the Board.
NOTES
[3] Every district is required to file a LRFP in accordance with N.J.S.A. 18A:7G-4.