NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4084-13T2

IN RE PETITION FOR AUTHORIZATION
TO CONDUCT A REFERENDUM ON THE
WITHDRAWAL OF THE BOROUGH OF
WOODCLIFF LAKE FROM THE PASCACK
VALLEY REGIONAL SCHOOL DISTRICT.
_________________________________

 Argued April 5, 2017 – Decided July 20, 2017

 Before Judges Fuentes, Simonelli and Gooden
 Brown.

 On appeal from the New Jersey Department of
 Education.

 William Harla argued the cause for appellants
 Township of River Vale and Borough of
 Hillsdale (DeCotiis, FitzPatrick & Cole, LLP,
 attorneys; Victoria A. Flynn, on the briefs).

 Kerri A. Wright argued the cause for
 respondent Borough of Woodcliff Lake (Porzio,
 Bromberg & Newman, P.C., attorneys; Vito A.
 Gagliardi, Jr., of counsel and on the brief;
 Ms. Wright, on the brief).

 Caroline G. Jones, Deputy Attorney General,
 argued the cause for respondent Board of
 Review (Christopher S. Porrino, Attorney
 General, attorney; Melissa H. Raksa, Assistant
 Attorney General, of counsel; Ms. Jones, on
 the brief).
PER CURIAM

 Appellants Township of River Vale (River Vale) and Borough

of Hillsdale (Hillsdale)1 appeal from the March 27, 2014 final

agency decision of respondent Board of Review of the Department

of Education (Board) to grant the petition of respondent Borough

of Woodcliff Lake (Woodcliff Lake) to pursue a referendum to

withdraw from the Pascack Valley Regional School District (the

Regional). We affirm.

 We begin with a review of the authority pertinent to this

appeal. N.J.S.A. 18A:13-51 to -81 establish the process to

withdraw from a limited purpose regional school district, such as

the Regional. A constituent school district "may, by resolution,

apply to the county superintendent of schools to make an

investigation as to the advisability of withdrawal of such local

district from the regional district." N.J.S.A. 18A:13-51. Within

sixty days of the request, the executive county superintendent

must issue a report as to the advisability of the proposed

withdrawal and the effect upon the educational and financial

condition of the withdrawing district and the regional district,

or upon each of the remaining constituent districts. N.J.S.A.

1
 We shall sometimes collectively refer to River Vale and Hillsdale
as appellants.

 2 A-4084-13T2
18A:13-52. Prior to issuing the report, the executive county

superintendent may require the constituent school districts to

submit a feasibility study in order to determine the educational

and financial impact of the withdrawal. Ibid.

 Within thirty days after the filing of the executive county

superintendent's report, the municipal governing body or the board

of education of the withdrawing district may petition the

Commissioner of Education for permission to submit the question

of withdrawal to the voters of all constituent districts. N.J.S.A.

18A:13-54. After the filing of any answers to the petition, the

Commissioner then submits the matter to a board of review to

determine "the effect of the proposed withdrawal . . . upon the

educational and financial condition of the withdrawing and the

remaining districts." N.J.S.A. 18A:13-56.

 The basis for the Board's decision "is closely

circumscribed." In re Petition for Authorization to Conduct a

Referendum on the Dissolution of Union Cty. Sch. Dist. No. 1, 298

N.J. Super. 1, 7 (App. Div.), certif. denied, 149 N.J. 37 (1997).

The Board may only deny a petition to withdraw from a limited

purpose regional school district upon a finding that:

 1. An excessive debt burden will be imposed
 upon the remaining districts, or the
 withdrawing district, or upon any of the
 constituent districts in the event of a
 dissolution;

 3 A-4084-13T2
 2. An efficient school system cannot be
 maintained in the remaining districts or the
 withdrawing district, or in any of the
 constituent districts in the event of a
 dissolution, without excessive costs;

 3. Insufficient pupils will be left in the
 remaining districts, or in any of the
 constituent districts in the event of a
 dissolution, to maintain a properly graded
 school system; or

 4. Any other reason, which it may deem to
 be sufficient[.]

 [N.J.S.A. 18A:13-56(b).]

See also In re Petition for Authorization to Conduct a Referendum

on the Withdrawal of North Haledon from the Passaic Cty. Manchester

Reg'l High Sch. Dist., 181 N.J. 161, 173 (2004). As we have

stated:

 Although N.J.S.A. 18A:13-56(b)(1) mandates
 that a petition be denied if an excessive debt
 burden will result, the statute does not
 define what constitutes an excessive debt
 burden. N.J.S.A. 18A:24-1 defines certain
 terms that pertain to a school district's
 financial status. Included among those terms
 is "borrowing margin," which establishes a
 formula for the amount of money a school
 district may borrow for capital expenditures,
 and is related to the equalized value of real
 estate of the municipality.

 [In re Petition for Authorization to Conduct
 a Referendum on the Withdrawal of Oradell from
 the River Dell Reg'l. Sch. Dist., 406 N.J.
 Super. 198, 207 (App. Div. 2009).]

 4 A-4084-13T2
We further stated that the catchall phrase in N.J.S.A. 18A:13-

56(b)(4)

 is limited to a reason of the same character
 as the other three factors, namely, a
 constitutional impediment to providing a
 thorough and efficient free public education
 for students in grades K-12. Thus, the Board
 may only deny the petition if any of the first
 three factors are present, or for a reason
 that would conflict with the State's
 obligation to provide a thorough and efficient
 system of education.

 [Ibid. (citations omitted).]

Any "less weighty reason would be an inadequate ground for

compelling constituent local school districts and municipalities

to preserve a regional school district against the will of a

majority of the voters in a majority of its local districts."

Union Cty., supra, 298 N.J. Super. at 8.

 The record reveals that the Regional is comprised of four

constituent school districts: River Vale, Hillsdale, Woodcliff

Lake, and Montvale.2 Each constituent district operates an

independent PK-83 district and sends their grades 9-12 students to

one of the two high schools that comprise the Regional. Students

from River Vale and Hillsdale attend Pascack Valley High School;

2
 Montvale did not participate in this appeal.
3
 PK means pre-kindergarten.

 5 A-4084-13T2
students from Woodcliff Lake and Montvale attend Pascack Hills

High School.

 Based on an agreement between the constituent municipalities,

from its inception in 1951, the Regional's annual and special tax

levies were apportioned on a per-pupil basis. However, legislation

enacted in 1975 required regional school districts to apportion

tax levies based on equalized property values. L. 1975, c. 212,

§ 29. Because Woodcliff Lake and Montvale had higher property

values, they paid a higher share of the tax levies. Thereafter,

in 1993, the Legislature enacted N.J.S.A. 18A:13-23, which allowed

regional school districts to apportion the annual and special tax

levies based on per-pupil costs, equalized property values, or a

combination of the two; however, all constituent municipalities

in the regional school district had to agree.

 In 2009, Woodcliff Lake retained experts to analyze various

options for educating its students and prepare a feasibility study.

Ultimately, the experts recommended that Woodcliff Lake pursue

withdrawal from, or dissolution of, the Regional in order to either

enter into a sending-receiving relationship with the Regional for

the education of its grades 9-12 students, or build its own high

 6 A-4084-13T2
school and become a grade K-124 school district and resume full

responsibility for the education of its students.

 Woodcliff Lake decided to pursue withdrawal. Because the tax

allocation method was the reason for this decision, Woodcliff Lake

first sought to modify the method, which required the agreement

of all four constituent municipalities. At the request of

Woodcliff Lake and Montvale, in September 2010, a special election

was held for the voters in the four constituent municipalities to

determine by referendum whether to change the tax apportionment

method from one based on an equalized property values to one based

on per-pupil costs. The referendum failed, and the tax

apportionment method remained unchanged.

 In 2012, Woodcliff Lake and Montvale each passed resolutions

to apply to the Bergen County Executive County Superintendent of

Schools (Superintendent) for an investigation of the advisability

of their withdrawal from the Regional. Woodcliff Lake submitted

an updated feasibility study that analyzed the demographics of

each constituent district, including projected population growth

and birth-rate data related to the total functional capacities of

each district's capabilities to manage individualized education.

Using that data, the experts applied the Cohort-Survival Ratio

4
 K means kindergarten.

 7 A-4084-13T2
Method in projecting enrollments from each constituent district.

They also factored in the effects of any proposed housing growth

in each constituent district to the best of their ability, as

River Vale and Hillsdale declined to provide information necessary

to the analysis. The experts indicated that Woodcliff Lake's

enrollment for grades 9-12 would likely slowly decline in the

coming years, while Montvale's enrollment for the same grades

would likely increase by approximately sixty-five students, and

Hillsdale's enrollment would remain status quo. The experts stated

that if Woodcliff Lake and Montvale both withdrew from the Regional

and created a joint regional high school, that high school

enrollment would slowly increase yearly. In analyzing school

capacity, the experts stated that while certain PK-8 schools may

slightly exceed capacity in 2016-17, the capacity of the buildings

was not a fixed number and each constituent district should be

able to accommodate these students without the need for building

additions.

 The experts analyzed six different alternative configurations

involving possible withdrawal from or dissolution of the Regional

and compared them to the status quo configuration. Regarding

educational impact, the experts stated that each constituent

district: had sufficient infrastructure to handle every

alternative configuration; would meet the state requirements for

 8 A-4084-13T2
curriculum; and had substantial community support. The experts

noted that the two current high schools servicing the Regional

performed at extremely high levels, rivaling the best in the State.

They reached similar conclusions as to each constituent district's

PK-8 program, finding they exceeded the State-average in skills

and knowledge competency. The experts considered the four

constituent districts on a comprehensive level, concluding that

all were either high performing districts or successful districts

on many levels.

 The experts found that the current configuration of all

constituent districts was working very well for their respective

students. While the current configuration was successful, the

experts determined that any of the other alternative

configurations would also succeed for each district, and cited

ample authority and examples for this conclusion. The experts

conceded that Woodcliff Lake's withdrawal from the Regional had

the potential to create some minor difficulties in maintaining the

articulation with the remaining districts. The experts also

concluded that the PK-12 regional proposals would offer slightly

more possibilities for program continuity. They found that none

of the alternative configurations would have a negative racial

impact.

 9 A-4084-13T2
 As for financial impact, the experts concluded that Woodcliff

Lake and Montvale disproportionately shared the tax burden on a

per-student basis. After setting forth their methodology and

analytical process, the experts concluded that except for

remaining status quo, Woodcliff Lake and Montvale residents would

save substantial tax monies under any of the alternative

configurations while Hillsdale and River Vale residents would pay

additional taxes. The experts found that if Woodcliff Lake

withdrew and entered into a sending-receiving relationship with

the Regional for the education of its grades 9-12 students,

Woodcliff Lake would experience savings of more than $3 million

annually. If Woodcliff Lake built its own high school, the experts

projected an annual savings of over $500,000, which would increase

following payment of the debt service associated with construction

of the high school.

 The experts also determined that each constituent district

had ample borrowing margin to sustain necessary expenses, and

concluded that none of the alternative configurations would cause

significant financial harm to any of the districts. The experts

opined that while withdrawal would cause minor difficulties, the

other alternative configurations were all viable. From a financial

perspective, the experts recommended that Woodcliff Lake withdraw

from the Regional.

 10 A-4084-13T2
 Appellants submitted a joint feasibility report. Their

experts opined that the petition should be denied because: some

of the educational opportunities may be lost if the Regional broke

apart; a greater financial burden would be imposed upon appellants'

residents; and the petition ran counter to State policy encouraging

consolidation and shared services by and among municipalities.

Woodcliff Lake did not contest these assertions, but rather claimed

they did not provide a basis for rejecting the petition.

 Appellants' experts also found the Regional was a high-

performing high school and concluded that potential tax savings

that Woodcliff Lake and Montvale may receive was de minimus. Based

on enrollment projections, the experts concluded that keeping the

Regional intact should be the objective. Regarding educational

impact, the experts concluded that the consequences included: the

need to set up a curriculum office; replication of certain

services; slight reductions in staff; renegotiated schedules;

reductions in course offerings; and reduction in professional

development opportunities. The experts estimated the total

educational expense related to reconfigurations was approximately

$2.2 million. Regarding security, the experts noted that the

schools would need independent security and new technology,

costing approximately $150,000. In addition, clubs and sports

would be more limited, would cost approximately $74,000, and

 11 A-4084-13T2
technological expenses would be incurred, such as new email and

servers, costing $683,000. The experts also opined that

possibilities for managing enrollment arise, and costs associated

with managing a central office staff could exist, costing another

$1.2 million. Ability to share staff would also suffer, as would

the ease with which special services could be provided. School

transportation and district governance expenses would also

increase. In sum, the experts concluded that

operational/educational expenses would increase over $6 million

under the proposed withdrawal.

 In terms of a financial impact, the experts did not dispute

that Montvale and Woodcliff Lake residents would experience

significant tax savings each year. Rather, they averred that

money should not be considered over the educational deprivation

withdrawal would cause.

 The Superintendent issued a report, concluding it was not

advisable for Woodcliff Lake singly, or Woodcliff Lake and Montvale

jointly, to withdraw from the Regional, or to dissolve the

Regional. Thereafter, Woodcliff Lake filed a verified petition

with the Commissioner of Education and Board pursuant to N.J.S.A.

18A:13-56, requesting authorization to pursue a referendum for the

voters in each constituent municipality to determine whether

 12 A-4084-13T2
Woodcliff Lake could withdraw from the Regional. Montvale did not

join in the petition; River Vale and Hillsdale opposed it.

 Woodcliff Lake submitted a supplemental report, which largely

reiterated the findings made in the prior feasibility study. Its

experts added there would be a sufficient number of students for

Woodcliff Lake to operate a successful K-12 program if necessary,

as shown by a comparison with similarly situated Midland Park.

The experts also concluded that curriculum and management would

benefit from a stand-alone model, as the Woodcliff Lake school

district could more clearly direct grades K-12 coursework and more

directly manage the board of education. The experts also noted

that there may be a reduction in teaching staff for the Regional,

and the Regional may have to cut selected foreign languages and

may not be able to field a football team.

 Appellants submitted a supplemental report, which reiterated

the financial analysis in their prior feasibility study. Their

experts also cited "community sentiment" and school size, along

with hypothetical logistical issues, as reasons for maintaining

the status quo.

 Following public hearings and review of the entire record,

the Board granted the petition in a March 27, 2014 written opinion.

The Board did not find that an excessive debt burden would be

imposed on any of the remaining constituent districts or Woodcliff

 13 A-4084-13T2
Lake by granting the petition. Rather, the Board found that while

the record presented the potential for a financial impact upon

Woodcliff Lake's withdrawal, there was no evidence it would

constitute an excessive debt burden.

 The Board did not find evidence that an efficient school

system could not be maintained in the remaining constituent

districts or in Woodcliff Lake without excessive costs. The Board

observed that in the event Woodcliff Lake decided to build a new

high school and create a new K-12 structure, it demonstrated it

could do so without excessive costs.

 Lastly, the Board determined that although student enrollment

of a proposed district would be small and would not provide the

same level of varied educational opportunities of a larger regional

district, it was within what was currently accepted as sufficient

to provide a thorough and efficient education. The Board noted

there would be sufficient pupils in both Woodcliff Lake and the

remaining constituent districts to maintain properly graded school

systems in each district.

 On appeal, appellants argue that Woodcliff Lake should not

have been permitted to rely on the withdrawal statute, N.J.S.A.

18A:13-56, to change the tax allocation method. Appellants also

argue that the Board failed to articulate a valid legal,

 14 A-4084-13T2
educational or financial basis to grant Woodcliff Lake's petition

to withdraw from the Regional.

 Our role in reviewing an agency's decision is limited. In

re Stallworth, 208 N.J. 182, 194 (2011). "[A] 'strong presumption

of reasonableness attaches to [an agency decision].'" In re

Carroll, 339 N.J. Super. 429, 437 (App. Div.) (quoting In re Vey,

272 N.J. Super. 199, 205 (App. Div. 1993), aff'd, 135 N.J. 306

(1994)), certif. denied, 170 N.J. 85 (2001). "In order to reverse

an agency's judgment, [we] must find the agency's decision to be

'arbitrary, capricious, or unreasonable, or [] not supported by

substantial credible evidence in the record as a whole.'"

Stallworth, supra, 208 N.J. at 194 (quoting Henry v. Rahway State

Prison, 81 N.J. 571, 579-80 (1980)). As our Supreme Court has

instructed,

 [i]n determining whether agency action is
 arbitrary, capricious, or unreasonable, [we]
 must examine:

 (1) whether the agency's action violates
 express or implied legislative policies, that
 is, did the agency follow the law; (2) whether
 the record contains substantial evidence to
 support the findings on which the agency based
 its action; and (3) whether in applying the
 legislative policies to the facts, the agency
 clearly erred in reaching a conclusion that
 could not reasonably have been made on a
 showing of the relevant factors.

 [Ibid. (quoting In re Carter, 191 N.J. 474,
 482-83 (2007)).]

 15 A-4084-13T2
 We "may not substitute [our] own judgment for the agency's,

even though [we] might have reached a different result." Ibid.

(quoting Carter, supra, 191 N.J. at 483). "This is particularly

true when the issue under review is directed to the agency's

special 'expertise and superior knowledge of a particular field.'"

Id. at 195 (quoting In re Hermann, 192 N.J. 19, 28 (2007)).

Furthermore, "[i]t is settled that [a]n administrative agency's

interpretation of statutes and regulations within its implementing

and enforcing responsibility is ordinarily entitled to our

deference." E.S. v. Div. of Med. Assistance & Health Servs., 412

N.J. Super. 340, 355 (App. Div. 2010) (second alteration in

original) (quoting Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J.

Super. 52, 56 (App. Div. 2001)). "Nevertheless, 'we are not bound

by the agency's legal opinions.'" A.B. v. Div. of Med. Assistance

& Health Servs., 407 N.J. Super. 330, 340 (App. Div.) (quoting

Levine v. State Dep't of Transp., 338 N.J. Super. 28, 32 (App.

Div. 2001)), certif. denied, 200 N.J. 210 (2009). "Statutory and

regulatory construction is a purely legal issue subject to de novo

review." Ibid. (citation omitted). The burden of proving that an

agency action is arbitrary, capricious, or unreasonable is on the

challenger. Bueno v. Bd. of Trustees of the Teachers' Pension and

Annuity Fund, 422 N.J. Super. 227, 234 (App. Div. 2011) (citing

 16 A-4084-13T2
McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App.

Div. 2002)).

 Applying the above standards, we discern no reason to reverse

the Board's decision. The Board was not required to articulate a

valid legal, educational, or financial basis to grant Woodcliff

Lake's petition to withdraw from the Regional. Rather, the Board

had to determine whether any of the four criteria in N.J.S.A.

18A:13-56(b) were implicated by Woodcliff Lake's withdrawal. If

the Board found none of the four criteria were implicated by the

withdrawal, it had to grant the petition.

 There was no evidence in this case establishing any of the

four criteria in N.J.S.A. 18A:13-56(b). There was no proof that

an excessive debt burden will be imposed on the remaining

constituent districts or Woodcliff Lake if Woodcliff Lake withdrew

from the Regional. Woodcliff Lake's experts opined that in all

alternative configurations they analyzed, each constituent

district had ample borrowing margin to sustain necessary expenses.

In concluding that none of the alternative configurations would

cause significant financial harm to any of the constituent

districts, the experts opined that Woodcliff Lake would experience

substantial tax savings. The experts concluded that Woodcliff

Lake may have to build a new high school; however, even in that

 17 A-4084-13T2
circumstance, it would save Woodcliff Lake $500,000 annually,

exclusive of the land acquisition costs.

 As for tax implications on residents of the constituent

districts, Woodcliff Lake's experts predicted that if Woodcliff

Lake withdrew and entered a sending-receiving relationship with

the Regional, its residents would save nearly $1500 per year in

taxes, while the residents of the remaining constituent districts

would see a yearly tax increase of less than $380. If Woodcliff

Lake withdrew entirely and built its own high school, the residents

in the remaining constituent districts would see yearly tax

increases of approximately $1100, but the Regional would

experience savings in other areas, such as teacher and

administrative salaries, of nearly $3 million annually, which

would help offset any expenses incurred. The experts concluded

that these savings would reduce the tax impact to less than $830

for the residents of the remaining constituent districts.

 Appellants' experts opined that these reductions would reduce

the Regional's savings, may implicate added personnel costs, and

cause a reduction of staff. They also claimed that withdrawal

would cause "disproportionate impact upon taxpayers" in the

remaining constituent districts. They opined that the Regional

would lose $3.64 million in revenue, if Woodcliff Lake withdrew

and entered into a sending-receiving relationship.

 18 A-4084-13T2
 All experts presented the Board with a detailed estimate of

financial impact. They all agreed there would be substantial tax

savings for Woodcliff Lake residents and added costs somewhere

between $3 and $6 million annually. However, none of the experts

deemed these costs "excessive," and the record supports a finding

that they are not excessive.

 There also is no evidence that an efficient school system

cannot be maintained without excessive costs in the remaining

constituent districts or in Woodcliff Lake if Woodcliff withdrew.

There will be, without doubt, some consequences to withdrawal,

especially in such a high performing district, to curriculum,

technology, clubs, and sports. However, each constituent district

has adequate facilities and are entirely competent to educate

their respective students. Woodcliff Lake's experts conducted a

thorough investigation, compiling large quantities of data,

interviewing leaders of the respective districts, and highlighting

test scores, all of which indicate that each remaining constituent

district could support 9-12 education either alone, or as a

remaining Regional, without Woodcliff Lake's participation. In

fact, the experts opined that each constituent district operating

as individual K-12 districts may even offer "slightly more

possibilities for articulation and program continuity."

 19 A-4084-13T2
 Lastly, none of the experts suggested that withdrawal of

Woodcliff Lake would leave an insufficient number of pupils in the

remaining constituent districts to maintain a properly graded

school system. The record also does not contain, nor have

appellants pointed to, any other reason why the Board should have

denied the petition.

 We conclude that the record amply supports the Board's

decision to grant Woodcliff Lake's petition, and the decision is

not arbitrary, capricious, or unreasonable.

 Affirmed.

 20 A-4084-13T2